# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
December 18, 2014 Session

## STEPHEN MICHAEL WEST, et al. v. DERRICK D. SCHOFIELD, et al.

**Appeal by Permission from the Court of Appeals, Middle Section
Chancery Court for Davidson County
No. 13-1627-I     Claudia C. Bonnyman, Chancellor**

_____

**No. M2014-00320-SC-R11-CV - Filed March 10, 2015**

_____

We granted the State of Tennessee permission to appeal from the Court of Appeals' decision on interlocutory appeal in which the intermediate appellate court affirmed the trial court's order compelling discovery in this declaratory judgment action. The Plaintiffs are seeking a declaration that the lethal injection protocol in place for the execution of convicted criminal defendants sentenced to death is unconstitutional. In conjunction with pursuing their claim, the Plaintiffs sought to discover the identity of persons involved in facilitating and carrying out executions. Over the State's objection, the trial court ordered the State to provide these identities to the Plaintiffs, and the Court of Appeals affirmed the trial court's order. Upon due consideration, we reverse and remand this matter for further proceedings consistent with this Opinion and in compliance with the timelines set forth in the judgment order filed contemporaneously with this Opinion.

**Tenn. R. App. P. 11 Appeal by Permission;
Judgment of the Court of Appeals Reversed;
Remanded**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which CORNELIA A. CLARK and HOLLY KIRBY, JJ., joined. SHARON G. LEE, C.J., concurred in results only. GARY R. WADE, J., filed a separate opinion concurring in the judgment only.

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; and Jennifer L. Smith, Deputy Attorney General, for the appellants, Derrick D. Schofield, Wayne Carpenter, Tony Mays, Jason Woodall, Tony Parker, John Doe Physicians 1-100, John Doe Pharmacists 1-100, John Doe Medical Examiners 1-100, John Doe Medical Personnel 1-100, and John Doe Executioners 1-100.

Stephen M. Kissinger and Susanne Bales, Assistant Federal Community Defenders, Knoxville, Tennessee, for the appellees, Stephen Michael West, Nicholas Todd Sutton, and David Earl Miller.

Kelley J. Henry, Supervisory Assistant Federal Public Defender, and Michael J. Passino, Assistant Federal Public Defender, Nashville, Tennessee, for the intervening appellees, Abu-Ali Abdur'Rahman, Donald R. Johnson, Donald Wayne Strouth, Charles Walton Wright, and Edmund George Zagorski.

C. Gene Shiles, Jr., and William J. Rieder, Chattanooga, Tennessee, for the appellee, Billy Ray Irick.

Kelly A. Gleason and Jonathan King, Assistant Post-Conviction Defenders, Nashville, Tennessee, for the intervening appellee, Lee Hall, Jr.

## OPINION

### Factual and Procedural Background

On September 27, 2013, the Tennessee Department of Correction adopted a new lethal injection protocol providing that inmates sentenced to death be executed by the injection of a lethal dose of a single drug, pentobarbital ("the Protocol"). On November 20, 2013, Stephen Michael West, Billy Ray Irick, Nicholas Todd Sutton, and David Earl Miller ("Plaintiffs"), all of whom have been sentenced to the death penalty for committing first degree murder, filed a declaratory judgment action in the Chancery Court for Davidson County, Tennessee, against: Derrick D. Schofield in his official capacity as Tennessee's Commissioner of Correction; Wayne Carpenter, in his official capacity as Warden of Riverbend Maximum Security Institution; Tony Mays, in his official capacity as Deputy Warden of Riverbend Maximum Security Institution; Jason Woodall, in his official capacity as Deputy Commissioner of Operations; Tony Parker, in his official capacity as Assistant Commissioner of Prisons; John Doe Physicians 1-100; John Doe Pharmacists 1-100; John Doe Medical Examiners 1-100; John Doe Medical Personnel 1-100; and John Doe Executioners 1-100 ("Defendants"). Also on November 20, 2013, Edmund Zagorski, Abu-Ali Abdur'Rahman, Charles Wright, and Don Johnson, all condemned inmates, moved to intervene as plaintiffs, and their motion was granted. These intervening plaintiffs filed a complaint for declaratory judgment on November 20, 2013, which they asserted "raises identical issues presented by the original complaint." On November 21, 2013, Lee Hall, a condemned inmate, moved to intervene as plaintiff, and his motion was granted. Hall filed a complaint for declaratory judgment on November 21, 2013, which he asserted "raises identical issues presented by the original complaint." On January 2, 2014, Donald Strouth,

a condemned inmate, moved to intervene as plaintiff, and his motion was granted. Strouth filed a complaint for declaratory judgment on January 2, 2014, which he asserted "raises identical issues presented by the original complaint."

The Plaintiffs filed an amended complaint on November 25, 2013 ("the Complaint").[1] The Plaintiffs are seeking declarations that the Protocol violates the Eighth and Fourteenth Amendments to the United States Constitution and article I, section 16 of the Tennessee Constitution. The Eighth Amendment to the United States Constitution and article I, section 16 of the Tennessee Constitution prohibit the infliction of cruel and unusual punishment. Because capital punishment is constitutional, "[i]t necessarily follows that there must be a means of carrying it out." Baze v. Rees, 553 U.S. 35, 47 (2008). "[T]he Constitution does not demand the avoidance of all risk of pain in carrying out executions." Id. Instead, to establish an Eighth Amendment violation, "the conditions presenting the risk must be '*sure or very likely* to cause serious illness and needless suffering,' and give rise to 'sufficiently *imminent* dangers.'" Id. at 50 (quoting Helling v. McKinney, 509 U.S. 25, 33, 34-35 (1993)) (emphases in Baze). "[T]o prevail on such a claim there must be a 'substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 842, 846 and n.9 (1994)).[2]

Specifically, the Plaintiffs allege that the Protocol: (1) "creates a substantial risk of unnecessary pain when carried out exactly in the manner prescribed"; (2) "will require the use of compounded pentobarbital"; (3) "fails to provide adequate qualifications and training

---

[1] Twenty-six additional death row inmates subsequently have been permitted to intervene.

[2] We note that, in an order filed on November 29, 2010, in a prior lawsuit by Plaintiff West challenging the State's previous three-drug lethal injection protocol, we explicitly stated as follows:

> In any proceedings on remand, the standards enunciated in the plurality opinion in Baze v. Rees, 553 U.S. 35, 51 (2008)[,] apply. The burden is on Mr. West to prove that the revised protocol creates an "objectively intolerable risk of harm that qualifies as cruel and unusual." Baze v. Rees, 553 U.S. at [50]. In order to carry this heavy burden, he must demonstrate that the revised protocol imposes a substantial risk of serious harm, *and* he must either propose an alternative method of execution that is feasible, readily implemented, and which significantly reduces the substantial risk of severe pain, Baze v. Rees, 553 U.S. at 52-53, or demonstrate that no lethal injection protocol can significantly reduce the substantial risk of severe pain.

State v. Stephen Michael West, No. M1987-000130-SC-DPE-DD, at 3 (Tenn. Nov. 29, 2010) ("the West Order"); see also Wellons v. Comm'r, Ga. Dep't of Corr., 754 F.3d 1260, 1266 (11th Cir. 2014); Mann v. Palmer, 713 F.3d 1306, 1315 (11th Cir. 2013).

of personnel to minimize the known risks involved in execution by lethal injection"; (4) "fails to require and include, and fails to comport with, those accepted medical practices necessary to minimize the known risks involved in execution by lethal injection"; and (5) "violates federal and state drug laws and the United States and Tennessee Constitutions." The Complaint also alleges that "Tennessee's secrecy statute, Tennessee Code Annotated [section] 10-7-504(h)(1), violates Plaintiffs' federal and state constitutional rights and 42 U.S.C. § 1983."

In their prayer for relief, the Plaintiffs also seek declarations that "any attempt by Defendants to carry out Plaintiffs' executions, and/or the carrying out of such executions, using the Lethal Injection Protocol will violate 42 U.S.C. § 1983"; that the Protocol is "on its face and as applied to Plaintiffs null and void and/or unconstitutional" under the federal and state constitutions; that the Protocol "causes, requires or constitutes violations of" various state and federal statutes; that the Protocol "is void as contrary to public policy"; and that the Protocol "is void as constituting an unlawful civil conspiracy."

On November 26, 2013, the Plaintiffs served their First Set of Interrogatories on the named Defendants and the State Attorney General's Office in which the Plaintiffs asked the Defendants to identify each John Doe Defendant[3] and, if such Defendant was not employed by the State, to "identify the business address where service of the summons may be had." During a scheduling conference on December 2, 2013, the Defendants indicated a possible objection to the interrogatories but agreed that a protective order regarding the identities of the John Doe Defendants should be entered "regardless of [the] interrogatory responses." In their December 4, 2013 written response to the interrogatories, the Defendants objected to each of the Plaintiffs' requests for the identities of the John Doe Defendants, asserting that (1) the identities of the individuals described were neither relevant nor material to the Plaintiffs' ability to challenge the Protocol used in executing a sentence of death and (2) their identities specifically were deemed confidential under Tennessee Code Annotated section 10-7-504(h), and, therefore, exempt from discovery under Tennessee Rule of Civil Procedure 26.02(1). The Defendants also asserted that the State's interest in maintaining the confidentiality of persons directly involved in the execution process outweighed the Plaintiffs' need for the discovery requested. Without conceding relevance, the Defendants offered to identify each "John Doe" by position and title and to provide a description of each

_____

[3] The record before us includes no request by the Plaintiffs for this information pursuant to the Public Records Act, Tenn. Code Ann. §§ 10-7-101 to -702 (2012), and the instant lawsuit is not a petition for enforcement of the Public Records Act, see id. § 10-7-505(a).

person's education, training, and employment, without disclosing personal, identifying information.[4]

On that same day, the Defendants moved the trial court to adopt an Agreed Protective Order, which provided: "The parties shall not reveal the identities of the 'John Doe' defendants except to the extent essential to conduct the proceedings at issue in this case." The order further stated: "The [D]efendants do not waive any protection, privilege or defense afforded by Tenn. Code Ann. § 10-7-504(h) by agreement to this protective order." The order also provided that it was intended to provide a mechanism for the handling of confidential information, but "[i]t shall not be deemed to be a waiver by any of the parties of any objections as to admissibility, relevancy, materiality, or discoverability, or a waiver of any right or protection otherwise afforded by the TENNESSEE RULES OF CIVIL PROCEDURE relating to discovery or the TENNESSEE RULES OF EVIDENCE or otherwise afforded by state law." The trial court entered the protective order on December 5, 2013.

On December 13, 2013, the Plaintiffs filed a Motion to Compel Responses to Plaintiffs' First Set of Interrogatories seeking the John Doe Defendants' identities. After hearing argument, the trial court granted the Plaintiffs' motion to compel discovery and ordered the Defendants to provide:

> [T]he identity and location of all John Doe defendants who had been scheduled to participate, and/or had already participated in, the execution of Plaintiff Billy Ray Irick that had been formerly . . . set for January 7, 2014, and/or all persons who, as of that date, had agreed, or tentatively agreed, whether formally or informally, to act in the capacity of those John Doe defendants described in Plaintiffs' First Set of Interrogatories.

In conjunction with issuing its order, the trial court stated the following during the hearing on the Plaintiffs' motion to compel:

> The Public Records Act and the matters that the state legislature has decided are sensitive are relevant to discovery because the Public Records Act and the confidentiality provision that is found in that act and other statutes alert the Court that the Court should consider a deviation from a very strongly-held value, which is that every piece of paper that's filed in the courts [is] public

---

[4] In their written response to the Plaintiffs' subsequent motion to compel, the Defendants also offered to produce John Doe Defendants for screened depositions.

record and that the courts of all the branches of government [are] transparent so that people can see whether justice is being done.

And so that's a very high value. However, where information is sensitive, I usually find that the lawyers cooperate in protecting the discovery. There's been some cooperation here. The State obviously has concluded, I think reasonably, that it should come forward and protect the identities of its clients out of respect for their privacy and respect for the pressure under which they may be functioning.

All that having been said, Rule 26 does state that the identity and location of persons having knowledge of any discoverable matter is relevant to the civil lawsuits that are filed in the courts of the state of Tennessee.

And so I'm finding that because there is a protective order and because all of the lawyers are officers of the court, I am going to grant the motion to compel, respectfully, because the persons whose identit[ies] [are] being sought are parties in this case. There's no motion to dismiss filed. And I understand why there hasn't been a motion to dismiss. I'm certainly not critical about that. Answer has been filed on their behalf.

To the extent that the State – of course – now that I have granted the motion to compel, I understand the State's position that well, we don't know who is going to be involved in the executions in 2014. However, I think if I find and direct the State to provide any lists of persons currently existing who the State would contract with or choose or address in order to follow through with the protocol that was scheduled for January. I mean, it seems like you're going to have that. If you don't have that, then I think the State has to provide the list of – either tell the [Plaintiffs] who is going to be involved and who was going to be involved in the January execution scheduled. Mr. Irick, I think, was scheduled to be executed in January, this month.

I think there is a way to address the unknown. There are a lot of things we don't know about what's going to happen in 2014. But I think the State's attorneys have to make inquiry as the rules of discovery provide, make inquiry and do the best they can to provide whatever identities you do have.

After the trial court granted the Plaintiffs' motion to compel, the State sought and obtained permission to pursue an interlocutory appeal. The Court of Appeals subsequently affirmed the trial court's order. See Stephen Michael West v. Derrick D. Schofield, No.

M2014-00320-COA-R9-CV, 2014 WL 4815957, at \*1 (Tenn. Ct. App. Sept. 29, 2014). The State then sought this Court's permission to appeal from the judgment of the Court of Appeals, and we have granted that permission. For the reasons set forth below, we reverse the judgment of the Court of Appeals and the trial court's order granting the Plaintiffs' motion to compel and remand this matter for further proceedings consistent with this Opinion.

**Analysis**

*Standard of Review*

The applicable standard of review for pretrial discovery decisions is abuse of discretion. Benton v. Snyder, 825 S.W.2d 409, 416 (Tenn. 1992). An abuse of discretion occurs when the trial court applies incorrect legal standards, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. State v. Banks, 271 S.W.3d 90, 116 (Tenn. 2008).

*Tennessee Rule of Civil Procedure 26.02(1)*

We begin our analysis with the text of Tennessee Rule of Civil Procedure 26.02(1):

> Parties may obtain discovery regarding any matter, *not privileged*, which is *relevant to the subject matter involved in the pending action*, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including . . . the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Tenn. R. Civ. P. 26.02(1) (emphases added). Thus, before a trial court may order matters divulged under this Rule, it must make a threshold determination that the matters sought are (1) not privileged and (2) relevant to the subject matter of the lawsuit.

In this case, the trial court, by granting the Plaintiffs' motion to compel, clearly concluded that the identities of the John Doe Defendants were not privileged. Furthermore, it concluded that their identities were relevant under Rule 26.02, stating that "the identity and location of persons having knowledge of any discoverable matter is relevant" and that "the persons whose identit[ies] [are] being sought are parties in this case." On appeal, the Court

of Appeals concluded that Tennessee Code Annotated section 10-7-504(h) did not constitute a privilege protecting the identities of the John Doe Defendants. Stephen Michael West, 2014 WL 4815957, at *10. The Court of Appeals also found "no common-law privilege applicable." Id. at *11 n.4. The Court of Appeals further concluded that the identities of the John Doe Defendants were relevant because they were admissible or reasonably would lead to admissible evidence. Id. at *5. We will begin our discussion with the first threshold issue of privilege.

*Privilege*

The State urges us to adopt a common-law privilege protecting the identities of those individuals involved in the execution of condemned inmates from disclosure applicable in civil discovery. The State grounds its argument in large part on the public policy against the disclosure of the identities of these persons made explicit by our legislature in the Public Records Act, specifically Tennessee Code Annotated section 10-7-504(h). This confidentiality provision provides as follows:

> Notwithstanding any other law to the contrary, those parts of the record identifying an individual or entity as a person or entity who or that has been or may in the future be directly involved in the process of executing a sentence of death shall be treated as confidential and shall not be open to public inspection.

Tenn. Code Ann. § 10-7-504(h)(1) (Supp. 2014).

The Plaintiffs have not sought the identities of the John Doe Defendants pursuant to a request under the Public Records Act. Nevertheless, the State argues that the General Assembly's clear intent to protect the confidentiality of these persons should influence our decision regarding whether their identities are entitled to protection under a common-law privilege. See, e.g., KD ex rel. Dieffenbach v. United States, 715 F. Supp. 2d 587, 592-97 (D. Del. 2010) (adopting common-law privilege regarding peer review documents based, in part, on congressional legislative history of the Patient Safety Quality Improvement Act of 2005); Francis v. United States, No. 09 Civ. 4004(GBD)(KNF), 2011 WL 2224509, at *6 (S.D.N.Y. May 31, 2011) (same).

We think it worthy of note that the legislative history of the confidentiality provision includes the following comments by the sponsor of the legislation, Senator Mark Norris:

> This deals with an additional exemption to the public records act as it relates to, of all things, executions in Tennessee. . . . The rationale behind the

execution exemption, if we can call it that, is that involvement in carrying out a death sentence in accordance with a valid court order and in accordance with state law shouldn't subject any person to retaliation by those who may disagree with that law, particularly on this very volatile and sometimes divisive issue.

There was a Court of Appeals decision two years ago, the Ray case, which interpreted our current statute more narrowly than we think is appropriate. In fact, so narrowly as only applying to persons that it has become difficult for the Department of Correction sometimes to obtain the materials that are needed because those who would provide the materials are afraid that they will be subject to some kind of exposure or liability.

What this bill does is to clarify that persons and entities, persons or entities, have the same protections under the . . . exemptions from public disclosure.

Hearing on S.B. 154, Before the State and Local Government Comm., 108th Gen. Assembly (Apr. 2, 2013) (statement of Sen. Mark Norris).

In the case referenced by Senator Norris, the Court of Appeals considered a lawsuit filed under the Public Records Act seeking the identities of the suppliers "of the substances necessary to carry out lethal injection executions and the employees who procured those substances." Paul Bottei v. Gayle E. Ray, No. M2011-00087-COA-R3-CV, 2011 WL 4342652, at *1 (Tenn. Ct. App. Sept. 15, 2011). The Public Records Act in effect at the relevant time provided, in pertinent part, as follows:

Notwithstanding any other law to the contrary, those parts of the record identifying an individual as a person who has been or may in the future be directly involved in the process of executing a sentence of death shall be treated as confidential and shall not be open to public inspection. For the purposes of this section "person" includes, but is not limited to, an employee of the state who has training related to direct involvement in the process of executing a sentence of death, a contractor or employee of a contractor, or a volunteer who has direct involvement in the process of executing a sentence of death. Records made confidential by this section include, but are not limited to, records related to remuneration to a person in connection with such person's participation in or preparation for the execution of a sentence of death.

Tenn. Code Ann. § 10-7-504(h)(1) (Supp. 2010). The Court of Appeals framed the issue as "whether the identities of persons or entities who supplied the lethal injection chemicals and the state employees who procured the chemicals are to be kept confidential." Paul Bottei, 2011 WL 4342652, at *3. The Court of Appeals concluded that subsection 504(h)(1) "only protects the identities of those persons who are 'directly involved' in the execution, not the identities of those who supplied the lethal injection chemicals to the state or the identities of the state employees who procured the chemicals." Id. Thus, the Court of Appeals agreed with the trial court that the contested identities were not exempted from disclosure under the Public Records Act. As a result, the contested identities were to be provided to the plaintiff. Id. at *1.

Senator Norris' comments clearly indicate that the legislature disagreed with the Court of Appeals' construction of subsection 504(h)(1) and that the legislature intended through its amendment to the statute to protect the identities of all persons and entities participating in the execution of a convicted murderer sentenced to death. See In re Baby, 447 S.W.3d 807, 823 (Tenn. 2014) (referring to legislative history in order to determine Tennessee's public policy concerning traditional surrogacy contracts); see also Bunarith Tep v. Southcoast Hosp. Grp., Inc., No. 13-11887-LTS, 2014 WL 6873137, at *5 (D. Mass. Dec. 4, 2014) (recognizing other federal courts' reliance on congressional legislative history as indicative of public policy favoring "broad protection for peer review work product in an effort to improve patient safety and quality of care"); Rosengarten v. Downes, 802 A.2d 170, 179-82 (Conn. App. Ct. 2002) (relying on legislative history to determine that Connecticut's public policy was contrary to plaintiff's claim that trial court had subject matter jurisdiction to dissolve plaintiff's foreign same-sex civil union).

Our legislature's concern with protecting the identities of those involved with executions also finds support in prior cases before Tennessee courts. Ricky Bell, a former warden of the Tennessee prison in which death row inmates are housed, has stated in an affidavit that the "identity of the execution team is kept confidential for the security of the institution and for the safety of the staff members and their families." Philip Workman v. Donal Campbell, No. M2001-01445-COA-R3-CV, 2002 WL 869963, at *6 (Tenn. Ct. App. May 7, 2002). The former warden explained, "[m]embers of the execution team and their families may be subject to retaliation and harassment if their identities became known throughout the institution or to the public at large." Id.

Indeed, when the United States District Court for the Middle District of Tennessee heard evidence from members of the execution team in an Eighth Amendment claim against a different lethal injection protocol, their testimony was provided from behind a screen to protect their anonymity. See Harbison v. Little, 511 F.Supp. 2d 872, 886 n.11 (M.D. Tenn. 2007), vacated on other grounds by Harbison v. Little, 571 F.3d 531, 539 (6th Cir. 2009).

In further recognition of the need to protect the anonymity of those involved in the execution process, the trial court in Harbison noted in its opinion that the witnesses "will not be identified by name in this opinion pursuant to provisions in state law that protect their identities." Id.

Statutory and case law from other jurisdictions also have addressed the necessity of protecting the identities of those involved in carrying out a death sentence. For instance, the Georgia legislature has enacted a statute classifying all "identifying information" about "any person or entity who participates in or administers the execution of a death sentence . . . [or] that manufactures, supplies, compounds, or prescribes the drugs, medical supplies, or medical equipment" used in an execution as a "confidential state secret" that is not subject to disclosure. Ga. Code Ann. § 42-5-36(d) (effective July 1, 2013).

Subsequently, a condemned inmate sought sealed discovery of the identities of the compounding pharmacy, the supply chain, and the manufacturers of any and all ingredients used in the lethal drug compounded to execute him. See Owens v. Hill, 758 S.E.2d 794, 797 (Ga. 2014), cert. denied __ U.S. __, 135 S. Ct. 449 (Nov. 3, 2014). Rejecting the inmate's attempt "to turn the First Amendment into an Open Records Act for information relating to executions," id. at 805, the Georgia Supreme Court held that disclosure was not warranted. Id. The Georgia court emphasized that the reasons supporting nondisclosure of the identities of those involved in the execution of a death row inmate "are obvious, including avoiding the risk of harassment or some other form of retaliation from persons related to the prisoners or from others in the community who might disapprove of the execution as well as simply offering those willing to participate whatever comfort or peace of mind that anonymity might offer." Id. The court continued:

> Although the identity of the executioner who actually inflicts death upon the prisoner is the most obvious party in need of such protection, we believe that the same logic applies to the persons and entities involved in making the preparations for the actual execution, including those involved in procuring the execution drugs.
>
> [Moreover], without the confidentiality offered to execution participants by the statute, . . . there is a significant risk that persons and entities necessary to the execution would become unwilling to participate.

Id.; see also Bryan v. State, 753 So.2d 1244, 1250-51 (Fla. 2000) (upholding statutes exempting execution-team identities from public disclosure in order to protect prison security and personal safety); cf. In re Lombardi, 741 F.3d 888, 894 (8th Cir. 2014) (en banc) (referring to an October 2013 letter "from a compounding pharmacy . . . that demanded the

-11-

Texas Department of Criminal Justice return a supply of compounded pentobarbital sold for use in executions, because of a 'firestorm,' including 'constant inquiries from the press, the hate mail and messages,' that resulted from publication of the pharmacy's identity"), cert. denied __ U.S. __, 134 S. Ct. 1790 (Apr. 7, 2014).

The United States Court of Appeals for the Eleventh Circuit also has rejected a condemned inmate's argument that the state's refusal to provide him with information about his execution denied him his First Amendment right of access to governmental proceedings. See Wellons v. Comm'r, Ga. Dep't of Corr., 754 F.3d 1260, 1266-67 (11th Cir. 2014). In affirming the district court's denial of relief on this claim, the Eleventh Circuit concluded that "[n]either the Fifth, Fourteenth, or First Amendments afford [the inmate] the broad right 'to know where, how, and by whom the lethal injection drugs will be manufactured,' [or] 'the qualifications of the person or persons who will manufacture the drugs, and who will place the catheters." Id. at 1267 (citing Lewis v. Casey, 518 U.S. 343, 354 (1996)), cert. denied __ U.S. __, 134 S. Ct. 2838 (June 17, 2014); see also Sepulvado v. Jindal, 729 F.3d 413, 420 (5th Cir. 2013) (stating, "There is no violation of the Due Process Clause from the uncertainty that Louisiana has imposed on Sepulvado by withholding the details of its execution protocol"), cert. denied, __ U.S. __, 134 S. Ct. 1789 (Apr. 7, 2014); Williams v. Hobbs, 658 F.3d 842, 852 (8th Cir. 2011) (holding that prisoners' argument – that Arkansas Method of Execution Act violated due process because its secrecy denied them an opportunity to litigate their claim that protocol violated the Eighth Amendment – failed to state a plausible due process access to the courts claim), cert. dismissed, __ U.S. __, 133 S. Ct. 97 (Sept. 20, 2012).

Additionally, in Wood v. Ryan, 759 F.3d 1076 (9th Cir. 2014), the inmate argued that withholding information about the drugs used to execute him and the qualifications of the medical personnel denied him his First Amendment right of access to governmental proceedings. Although the Ninth Circuit determined that Wood was entitled to this information "subject to the restriction that the information provided will not give the means by which the specific individuals can be identified," id. at 1088, the United States Supreme Court reversed that decision and granted the State's application to vacate the judgment. Ryan v. Wood, __ U.S. __, 135 S. Ct. 21 (mem) (July 22, 2014).

These authorities make clear that, not only has our legislature declared the public policy of Tennessee to favor the anonymity of those involved in carrying out capital punishment, but there is neither a statutory nor a constitutional barrier to the adoption of a common-law privilege that would prohibit the disclosure in civil litigation of the identities of those persons involved in the execution of condemned inmates. Nevertheless, we conclude that it is unnecessary to adopt such a privilege in this case because, as set forth

below, we hold that the John Doe Defendants' identities are not relevant to the subject matter of this action.

*Relevance*

We now turn to the second threshold issue of relevance. As set forth above, matters discoverable pursuant to Rule 26.02(1) must be "relevant to the subject matter involved in the pending action." Tenn. R. Civ. P. 26.02(1). "The phrase 'relevant to the subject matter involved in the pending action' is synonymous with 'germane' or 'bearing on the subject matter.'" Vythoulkas v. Vanderbilt Univ. Hosp., 693 S.W.2d 350, 359 (Tenn. Ct. App. 1985) (citing Local 13, Detroit Newspaper Union v. N.L.R.B., 598 F.2d 267, 271 (D.C. Cir. 1979)), superceded on other grounds by Tenn. R. Civ. P. 26.02(4)(B). Referring to the analogous federal rule for guidance, this Court has recognized that "the subject matter of a case is not limited to the merits of the case because 'a variety of fact-oriented issues may arise during litigation that are not related to the merits.'" Thomas v. Oldfield, 279 S.W.3d 259, 262 (Tenn. 2009) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).[5] For instance, "information concerning the existence and extent of liability insurance coverage may be relevant to settlement negotiations or trial preparation." Id. (citations omitted). Nevertheless, the information sought by a plaintiff through discovery must have some logical connection to proving his case and/or obtaining his prayed-for relief.

As to the determination of what information is relevant for the purposes of Rule 26, it is helpful to examine the definition of relevance set forth in our Rules of Evidence: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. But see Boyd v. Comdata Network, Inc., 88 S.W.3d 203, 220 n.25 (Tenn. Ct. App. 2002) (noting that relevancy "is more loosely construed during discovery than it is at trial"). Thus, the crucial issue in determining the relevance of any particular information for the purposes of Rule 26, and therefore its

---

[5] Our Court of Appeals has recognized that Federal Rule of Civil Procedure 26 was amended in 2000 and

> now limits discovery without court approval to any non-privileged matter that is 'relevant to the claim or defense of any party.' As a result of the 2000 amendment to Fed. R. Civ. P. 26(b)(1), discovery of matters relevant to the subject matter involved in the pending action can only be obtained by court order upon the showing of good cause. Federal Practice and Procedure § 2008, at 14-15 (Supp. 2001).

Boyd v. Comdata Network, Inc., 88 S.W.3d 203, 219 n.24 (Tenn. Ct. App. 2002). That is, the federal rules have been amended to narrow the scope of discovery that is available without prior judicial approval.

discoverability, is whether it has (or will lead to information which has) some probative value *as to the subject matter involved in the pending action*. Accordingly, before compelling discovery under Rule 26, a trial court first must determine what is included in "the subject matter involved in the pending action." Tenn. R. Civ. P. 26.02(1). In this action for declaratory judgment, the subject matter is whether the Protocol violates the Plaintiffs' federal and state constitutional rights. The Plaintiffs have brought a facial challenge to the Protocol *as written*. Any relevance of the John Doe Defendants' identities must be analyzed in that specific context.

As to the facial challenge, we hold that the John Doe Defendants' identities are not relevant to a determination of the constitutionality of the Protocol as written. The Protocol must be assessed *on its face* against the constitutional challenges levied by the Plaintiffs. The identities of the persons who may facilitate or carry out the Protocol are not relevant to a determination of whether the Protocol passes constitutional muster.

In determining that the sought-after identities were relevant, the Court of Appeals focused on the provision in Rule 26 that "'the identit[ies] . . . of persons having knowledge of any discoverable matter' are expressly discoverable." Stephen Michael West, 2014 WL 4815957, at *5 (quoting Tenn. R. Civ. P. 26.02(1)). However, this clause of Rule 26 explicitly refers to knowledge of any *discoverable* matter, emphasizing the prerequisite that such persons' knowledge must concern *the subject matter of the lawsuit*.

Moreover, the Court of Appeals concluded that the identities of the John Doe Defendants were relevant because, without their identities, the Plaintiffs "would be unable to independently verify [their qualifications to participate in executing a condemned inmate] or subject [those qualifications] to meaningful scrutiny." Stephen Michael West, 2014 WL 4815957, at *5. This conclusion indicates that the Court of Appeals was analyzing the relevance of the John Doe Defendants' identities in terms of their qualifications to *apply* the Protocol. However, the subject matter involved in the pending action is the constitutionality of the Protocol itself. In short, this declaratory judgment action involves a facial challenge to the constitutional validity of the Protocol as written, *not* as applied.[6]

The trial court likewise failed to consider the crucial distinction between the Plaintiffs' facial challenge to the Protocol as written and any challenges the Plaintiffs may be attempting to raise to the Protocol as it hypothetically may be applied on some uncertain date in the future by currently unidentifiable persons. Consequently, both courts below erred in concluding that the John Doe Defendants' identities were relevant and discoverable under Rule 26. Cf. Abdur'Rahman v. Bredesen, 181 S.W.3d 292, 308 (Tenn. 2005) (rejecting

---

[6] To the extent the Plaintiffs are attempting to raise claims about the Protocol as applied, see infra.

inmate's claim under the Administrative Procedures Act that the three-drug lethal injection protocol violated the Eighth Amendment by causing unnecessary pain and suffering and concluding, "[W]e cannot judge the lethal injection protocol based solely on speculation as to problems or mistakes that *might* occur. We must instead examine the lethal injection protocol as it exists today.").

Other appellate courts, too, have concluded that the identities of those involved in carrying out the death penalty are not relevant to lawsuits by condemned inmates seeking to challenge their executions. For instance, in a case before the Eighth Circuit in which the plaintiffs raised claims "[c]iting various constitutional, statutory, and regulatory provisions," the plaintiffs

> challenge[d] the . . . authority [of the director of the Missouri Department of Corrections] to use pharmacist-compounded pentobarbital in executions at all, to carry out executions or modify the execution protocol during the pendency of this litigation, to name any prescribing physician, pharmacist, or laboratory to the execution team, and to shield the identities of execution team members like the physician, pharmacist, and laboratory from the plaintiffs and the public. They also complain[ed] that the execution team could use a central venous line to insert a catheter when it is not clinically indicated (despite a supervising official's affidavit to the contrary), and that changes in the execution protocol create uncertainty that enhance[d] anxiety for the prisoners.

Lombardi, 741 F.3d at 897. The Eighth Circuit held that, as to these claims, "the identities of the prescribing physician, pharmacist, and laboratory are plainly not relevant" under Federal Rule of Civil Procedure 26 because "the merits of these claims do not depend on the identities of the physician, pharmacist, or laboratory." Id. Accordingly, the federal Court of Appeals granted the defendant's requested writ of mandamus vacating the district court's orders requiring the disclosure of these identities. Id.[7]

Similarly, as noted above, the Georgia Supreme Court also has held that condemned inmates are not entitled to the identities of those persons involved in the execution process. See Hill, 758 S.E.2d at 805-06. Although Hill was in a different procedural posture than the instant case because the trial court had granted an interlocutory injunction, which required,

---

[7] But see In re LeBlanc, 559 Fed. Appx. 389, 391, 393 (5th Cir. 2014) (denying petition for writ of mandamus seeking relief from district court's order compelling Louisiana corrections officials to disclose to death row inmate, pursuant to Federal Rule of Civil Procedure 26, "the identity of the [lethal injection] drugs' manufacturers and sources; the entities involved in supplying and testing those lethal chemicals; and the healthcare professionals who will be personally and directly involved in the process of carrying out the execution") (limited precedential value pursuant to Fifth Circuit Local Rules).

*inter alia*, that there was a substantial likelihood that the inmate would prevail on the merits of his claim at trial, the Georgia Supreme Court correctly noted that "each of Hill's arguments *ultimately* centers on his claim that there is an unconstitutional risk that his execution will amount to cruel and unusual punishment." Id. at 801. Accordingly, the court concluded that the inmate had "utterly failed to show with any specificity how learning the identity of the specific compounding pharmacy involved in his case, even assuming that it has had problems producing some medications in the past, would substantially improve his factual showing in support of his underlying Eighth Amendment claim." Id. at 802-03. Stated otherwise, the identity of the compounding pharmacy was not relevant to the inmate's Eighth Amendment claim.

In this case, the trial court failed to conduct a relevance analysis based on the correct legal standard. Accordingly, the trial court erred when it granted the Plaintiffs' motion to compel because the identities of the John Doe Defendants are not relevant to the subject matter involved in the pending action. The Court of Appeals likewise utilized an incorrect analysis in reviewing and affirming the trial court's order compelling disclosure. We hold that the Plaintiffs are not entitled to the disclosure of the John Doe Defendants' identities under Rule 26.02(1) because the John Doe Defendants' identities are not relevant to a facial challenge to the Protocol.

*Balancing Test*

Even if a trial court determines that information sought pursuant to Rule 26 is not privileged and is relevant to the subject matter involved in the pending action, the trial court further should balance the specific need for the information against the harm that could result from disclosure of the information.

Weighing the propriety of a discovery request for sensitive information involves not just determinations about privilege and relevance, but also the balancing of additional considerations, including the "'protection of privacy, property and secret matters,'" and the "'protection of parties or persons from annoyance, embarrassment, oppression, or undue burden or expense.'" Johnson v. Nissan N. Am., Inc., 146 S.W.3d 600, 605 (Tenn. Ct. App. 2004) (quoting Cyc. Fed. Proc. § 25.34 (3d ed. 2001)); accord Atlanta Journal-Constitution v. Jewell, 555 S.E.2d 175, 180 (Ga. Ct. App. 2001) ("Under general discovery rules applicable to all parties, not only must a trial court determine whether the requested discovery is relevant and material, but when parties seek discovery of unprivileged but sensitive materials, the trial court must balance the requesting party's specific need for the material against the harm that would result by its disclosure."); J.L.M. v. R.L.C., Jr., 132 S.W.3d 279, 287 (Mo. Ct. App. 2004) (recognizing that "[i]n addition to considering issues of whether the information sought in discovery is relevant or subject to privilege, the trial court should

consider the extent to which the information sought would invade the privacy of the responding party or other individuals").

The trial court failed to give adequate consideration to the State's need to protect the privacy of those involved in the execution of condemned inmates and its need to protect those persons from annoyance, embarrassment, and/or oppression. By basing its ruling on an erroneous assessment of the relevant factors, the trial court erred when it ordered the State to disclose to the Plaintiffs the identities of the John Doe Defendants. See State v. Garrett, 331 S.W.3d 392, 401 (Tenn. 2011) ("This Court will also find an abuse of discretion when the trial court has failed to consider the relevant factors provided by higher courts as guidance for determining an issue."). The Court of Appeals likewise failed to undertake this crucial balancing of competing interests based on its erroneous conclusion that, "[w]ith regard to discovery, a court engages in a balancing of the parties' interests only after a threshold determination that a privilege applies." Stephen Michael West, 2014 WL 4815957, at *11.

We must remain mindful that the United States Constitution and the Tennessee Constitution both permit the execution of those convicted of first degree murder and sentenced to capital punishment. See Baze, 553 U.S. at 47; State v. Henretta, 325 S.W.3d 112, 143 (Tenn. 2010). The State must have a means of carrying out these constitutional sentences. Any constitutionally valid means of execution requires the participation of numerous individuals (collectively, "the Participants"). Nevertheless, the execution of condemned inmates remains a highly divisive and emotionally charged topic in Tennessee. Revealing the identities of the Participants, even subject to a protective order, creates a risk that the Participants would be deterred from performing their lawful duties.[8]

In sum, although we base our holding on principles of relevance, we also note that neither of the courts below considered adequately the "protection of privacy, property, and secret matters; and the protection of parties or persons from annoyance, embarrassment, oppression, or undue burden or expense." Johnson, 146 S.W.3d at 605.

---

[8] We acknowledge that the trial court ordered that the John Doe Defendants' identities be provided subject to a protective order. Nevertheless, the sheer number of parties involved in this case – we note that twenty-six more condemned inmates have intervened in this action – and the number of experts required to consider the qualifications, etc., of the John Doe Defendants, create legitimate concerns that the John Doe Defendants' identities, even inadvertently, eventually will become public. Cf. Chester v. Wetzel, No. 1:08-CV-1261, 2014 WL 6066146, at *4 (M.D. Penn. Nov. 13, 2014) (granting newspapers' motion to intervene to seek disclosure of sources of pharmacological agents to be used in execution after information was ordered sealed).

In addition to challenging the constitutionality of the Protocol as written, the Plaintiffs also have raised some allegations asserting that the Protocol may be unconstitutional as applied in the future. For instance, Count II alleges that "there is a substantial risk that Defendants will use pentobarbital from a source, i.e. Defendant Pharmacist(s), that compounds A[ctive] P[harmaceutical] I[ngredient]s obtained from non-FDA-approved facilities" and that "[t]he substantial risk that the compounded pentobarbital will not be the concentration required under the Lethal Injection Protocol due to the use of A[ctive] P[harmaceutical] I[ngredient]s obtained from non-FDA-approved facilities increases the already substantial risk that the Plaintiffs will not receive an adequate dose of pentobarbital . . . thereby inflicting unnecessary pain." Count IV alleges that there "is a substantial risk that persons performing the medical procedures incorporated into the Lethal Injection Protocol will be impaired during Plaintiffs' executions." The Complaint also contains a specific prayer for relief from the Protocol "as applied to Plaintiffs."

The Complaint asserts that the chancery court "has jurisdiction pursuant to Tenn. Code Ann. §§ 29-14-103, 29-14-113." Both of these provisions are included in our Declaratory Judgments Act, Tenn. Code Ann. §§ 29-14-101 to -113 (2000, Supp. 2011, & 2012). Tennessee Code Annotated section 29-14-103 provides as follows:

> Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder.

Tenn. Code Ann. § 29-14-103 (2012). Section 113 provides that "[t]his chapter is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and is to be liberally construed and administered." Id. § 29-14-113 (2012).

With respect to the Declaratory Judgments Act, this Court has asserted:

> The primary purpose of the Declaratory Judgment[s] Act is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations. . . ." Tenn. Code Ann. § 29-14-113. Although the Act is "to be liberally construed and administered," id., we have acknowledged that "certain limitations must be placed upon the operation of

-18-

the statute." <u>Johnson City v. Caplan</u>, 194 Tenn. 496, 253 S.W.2d 725, 726 (1952). For example, *a declaratory judgment action cannot be used by a court to decide a theoretical question*, <u>Miller v. Miller</u>, 149 Tenn. 463, 261 S.W. 965, 972 (1924), render an advisory opinion which may help a party in another transaction, <u>Hodges v. Hamblen County</u>, 152 Tenn. 395, 277 S.W. 901, 902 (1925), *or "allay fears as to what may occur in the future,"* <u>Super Flea Mkt. [v. Olsen]</u>, 677 S.W.2d [449,] 451 [(Tenn. 1984)]. Thus, in order to maintain an action for a declaratory judgment a justiciable controversy must exist. <u>Jared v. Fitzgerald</u>, 183 Tenn. 682, 195 S.W.2d 1, 4 (1946). For a controversy to be justiciable, *a real question rather than a theoretical one must be presented* and a legally protectable interest must be at stake. <u>Cummings v. Beeler</u>, 189 Tenn. 151, 223 S.W.2d 913, 915 (1949). *If the controversy depends upon a future or contingent event, or involves a theoretical or hypothetical state of facts, the controversy is not justiciable.* <u>Story v. Walker</u>, 218 Tenn. 605, 404 S.W.2d 803, 804 (1966). If the rule were otherwise, the "courts might well be projected into the limitless field of advisory opinions." <u>Id.</u>

<u>State v. Brown & Williamson Tobacco Corp.</u>, 18 S.W.3d 186, 193 (Tenn. 2000) (emphases added); <u>see also</u> <u>UT Med. Group, Inc. v. Vogt</u>, 235 S.W.3d 110, 119 (Tenn. 2007) ("To be justiciable, a case must involve presently existing rights, live issues that are within a court's jurisdiction, and parties who have a legally cognizable interest in the issues. A case is not justiciable if it does not involve a genuine, existing controversy requiring the adjudication of presently existing rights.") (citing <u>Brown & Williamson Tobacco Corp.</u>, 18 S.W.3d at 193; <u>State ex rel. Lewis v. State</u>, 347 S.W.2d 47, 48-49 (Tenn. 1961)); <u>S. Ry. Co. v. Dunn</u>, 483 S.W.2d 101, 103-04 (Tenn. 1972); <u>Mills v. Shelby Cnty Election Comm'n</u>, 218 S.W.3d 33, 39-40 (Tenn. Ct. App. 2006) (affirming trial court's dismissal of complaint for declaratory judgment because plaintiff "present[ed] a theoretical question of what *may* happen in future elections, which question does not rise to the level of a justiciable controversy") (citing <u>Brown & Williamson Tobacco Corp.</u>, 18 S.W.3d at 193); <u>Campbell v. Sundquist</u>, 926 S.W.2d 250, 257 (Tenn. Ct. App. 1996) ("The existence of a justiciable controversy is also a jurisdictional prerequisite to the maintenance of an action under the [Declaratory Judgments] Act."), <u>abrogated on other grounds by</u> <u>Colonial Pipeline Co. v. Morgan</u>, 263 S.W.3d 827, 853 (Tenn. 2008). Indeed, as our Court of Appeals recognized many years ago:

That to maintain an action for a declaratory judgment a justiciable controversy must exist between persons with adverse interests is well settled. For a controversy to be justiciable, a real question rather than a theoretical one must be presented and a real legally protectable interest must be at stake on the part of plaintiff. If the controversy depends upon a future or contingent event or involves a theoretical or hypothetical state of facts, the controversy is not

justiciable under the Tennessee Declaratory Judgments Act. The Declaratory Judgments Act does not give the courts jurisdiction to render advisory opinions to assist the parties or to allay their fears as to what may occur in the future.

Parks v. Alexander, 608 S.W.2d 881, 891-92 (Tenn. Ct. App. 1980) (citations omitted).[9]

Preliminarily, we note that the Complaint contains no specific allegation as to how the Protocol is unconstitutional as applied to any individual Plaintiff.[10] Therefore, we question whether the allegations of the Complaint actually are sufficient to constitute an as-applied challenge to the Protocol. See Waters v. Farr, 291 S.W.3d 873, 923 (Tenn. 2009) (recognizing that challenges to the constitutionality of statutes "as applied" "requires the challenger to demonstrate that the statute operates unconstitutionally when applied to the challenger's particular circumstances") (Koch, J., concurring in part, dissenting in part); see also United States v. Marcavage, 609 F.3d 264, 273 (3d Cir. 2010) ("An as-applied attack, in contrast [to a facial attack], does not contend that a law is unconstitutional as written but that its application *to a particular person under particular circumstances* deprived that person of a constitutional right.") (emphasis added).[11]

We are mindful that public officials in Tennessee are presumed to discharge their duties in good faith and in accordance with the law. See, e.g., Reeder v. Holt, 418 S.W.2d 249, 252 (Tenn. 1967); Mayes v. Bailey, 352 S.W.2d 220, 223 (Tenn. 1961) ("There is a presumption of good faith ordinarily accorded to public officials and quasi public officials.");

---

[9] Clearly, the Plaintiffs' facial challenge to the constitutional validity of the Protocol as written presents a justiciable controversy.

[10] Indeed, at oral argument, despite repeated questions, counsel for the Plaintiffs was unable to identify any allegation in the Complaint as to any individual Plaintiff on an as-applied challenge.

[11] For examples of claims recognized by the courts as "as-applied" challenges, see, e.g., Davis v. State, 142 So. 3d 867, 871 (Fla. 2014) (inmate claimed that his medical condition of porphyria rendered the lethal injection protocol unconstitutional as applied to him), cert. denied __ U.S. __, 135 S. Ct. 15 (Jul. 10, 2014); Henry v. State, 134 So. 3d 938, 946 (Fla. 2014) (inmate claimed that, due to his "specific medical concerns," including coronary artery disease and medication for high blood pressure, "the use of midazolam as the first drug of the lethal injection process creates an unconstitutional risk of severe pain"), cert. denied __ U.S. __, 134 S. Ct. 1536 (Mar. 20, 2014); Howell v. State, 133 So. 3d 511, 518 (Fla. 2014) (inmate alleged that his history of bipolar disorder, brain damage, PTSD, and extreme anxiety "create[d] an increased risk that he will suffer a paradoxical reaction to midazolam, meaning that midazolam will have the opposite effect on him that it has on others and thus will not properly anesthetize him"), cert. denied __ U.S. __, 134 S. Ct. 1376 (Feb. 26, 2014); see also In re Ohio Execution Protocol Litigation, 994 F. Supp. 2d 906, 912 (S.D. Ohio 2014) (inmate sought a stay of execution on the basis that the lethal injection protocol would cause his execution to violate the Eighth Amendment because he possessed "physical and medical characteristics that increase his risk of obstructive sleep apnea").

-20-

Jackson v. Aldridge, 6 S.W.3d 501, 503 (Tenn. Ct. App. 1999) (recognizing the presumption that "public officials perform their duties in the manner prescribed by law"); State ex rel. Witcher v. Bilbrey, 878 S.W.2d 567, 576 (Tenn. Ct. App. 1994) ("Public officials . . . are presumed to perform their duties in good faith and are also presumed to know and act in accordance with the law.") (internal citations omitted).

Even assuming, *arguendo,* that the Plaintiffs sufficiently have alleged that the Protocol is somehow unconstitutional as applied to one or more of them, or that one or more individuals may cause the Protocol to be carried out in an unconstitutional manner in the future, these claims are hypothetical and speculative and do not constitute a justiciable controversy under the Declaratory Judgments Act.[12]  Cf. Nat'l Endowment for the Arts v. Finley, 524 U.S. 569, 583-84 (1998) (stating, in response to a claim that a statute was facially unconstitutional because it could be used to engage in viewpoint discrimination, "we are reluctant, in any event, to invalidate legislation on the basis of its hypothetical application to situations not before the Court") (internal quotation marks omitted).  Accordingly, the Plaintiffs are not entitled in this proceeding to the discovery of information as to claims that are merely speculative and do not present a justiciable controversy.

### Conclusion

For the reasons set forth above, we hold that the trial court committed reversible error when it granted the Plaintiffs' motion to compel and ordered the State to provide the Plaintiffs with the identities of the John Doe Defendants.  Accordingly, the trial court's order granting the Plaintiffs' motion to compel and the Court of Appeals' judgment affirming that order are reversed.  This matter is remanded to the trial court for further proceedings consistent with this Opinion and in compliance with the timelines set forth in the judgment order filed contemporaneously with this Opinion.

_____
JEFFREY S. BIVINS, JUSTICE

---

[12] Our holding in this interlocutory proceeding does not preclude appropriate as-applied challenges to the Protocol that may arise in the future.