# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
October 13, 2015 Session

## ERIC L. TATE DAVIS v. KRISTIN A. HOOD

**Appeal from the Chancery Court for Williamson County**
**No. 40758     Don R. Ash, Senior Judge**

_____

**No. M2014-02490-COA-R3-CV – Filed June 30, 2016**

_____

This appeal arises from post-divorce efforts to modify a permanent parenting plan. The father filed a petition to modify child support and subsequently amended his petition to include a request to modify the residential parenting schedule. The mother filed a counter-petition, seeking to limit the father to supervised visitation. After a hearing, the trial court dismissed the father's petition to modify the residential parenting schedule because the father failed to prove a material change of circumstance. The court, however, found that the mother did prove a material change of circumstance and that modification of the residential parenting schedule to restrict the father to supervised visitation was in the best interest of the child. The trial court also modified child support and awarded the Mother one-half of her attorney's fees. Both parties appeal the trial court's decision. The father appeals the trial court's findings with regard to material changes of circumstance, child support, and the award of attorney's fees. The father also appeals the trial court's decision to limit his pretrial discovery. The mother appeals the trial court's award of only half of her attorney's fees and decision to divide the costs of supervised visitation between the parties. Upon reviewing the record, we affirm the trial court's decision and remand this case for a determination of the amount of Mother's reasonable attorney's fees on appeal.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which ANDY D. BENNETT, J., and STEVEN STAFFORD, P.J., W.S., joined.

Eric L. Tate Davis, Franklin, Tennessee, pro se.

Rebecca E. Byrd, Franklin, Tennessee, for the appellee, Kristin A. Hood.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

Eric L. Tate Davis ("Father") and Kristin A. Hood ("Mother") divorced in November of 2012. They have one child, Morgan, born in February of 2011. Their divorce decree incorporated an Agreed Permanent Parenting Plan Order, which governed parenting time with Morgan and child support. The agreed order designated Mother as the primary residential parent and granted Father parenting time on Saturdays and Sundays, but no overnight visitation. The agreed order obligated Father to pay $399 each month as child support. The agreed order also obligated Father to pay a pro rata share of Mother's work-related child care costs beginning January 1, 2013.

On August 30, 2013, Father filed a petition in the Chancery Court for Williamson County, Tennessee, to modify child support. Father alleged a significant variance existed between his current child support obligation and the amount of support required by the Tennessee Child Support Guidelines (the "Guidelines"). Father asked the court to recalculate child support under the Guidelines and to make the new amount retroactive to the date of the filing of his petition. Subsequently, Father filed an amended petition, which included a request to modify the residential parenting schedule. Father alleged a material change of circumstance in that he was exercising significantly more parenting time than set forth in the agreed order.

After obtaining an order of protection[1] against Father, Mother filed a counter-petition, seeking modification of the residential parenting schedule to require supervised visitation. Mother alleged that Father's increasingly erratic behavior and alcohol use constituted a material change of circumstance.

After several discovery disputes, the court held a final hearing on July 9 and 10, 2014. The parties filed only a partial transcript of the hearing. *See* Tenn. R. App. P. 24(b). Therefore, our discussion of the proceedings at the final hearing is limited to only those matters included in the appellate record.[2]

---

[1] On December 11, 2013, Mother obtained an order of protection against Father limiting him to supervised visitation with Morgan for two hours each Saturday. The order of protection was for a period of one year.

[2] Father provided notice that he was filing the testimony of Father, Mother, and Mother's tax preparer; however, the testimony of the tax preparer is not included in the appellate record. Mother did not designate any additional portions of the hearing transcript as necessary for our consideration of the issues on appeal. Both parties share responsibility for providing a record that "convey[s] a fair, accurate and complete account of what transpired" in the trial court. Tenn. R. App. P. 24(b); *see Jennings v. Sewell-Allen Piggly Wiggly,* 173

A.  Testimony of the Parties at the Hearing

1.  Proof of a Material Change of Circumstance

Both parties agreed that, after the divorce and at Mother's request, Father exercised overnight visitation with Morgan.  Father testified he kept Morgan five or six nights in May and June 2013, fourteen days and nights in June or July 2013 during Mother's vacation in Greece, and five or six more nights in July and August 2013.

After her vacation in Greece, Mother offered to allow Father to keep Morgan every Wednesday night and on the weekends.  According to Father, Mother rescinded her offer after he asked her to modify child support in light of the additional residential time he would have with Morgan.  Beginning August 30, 2013, Father refused to keep Morgan overnight without a formal modification to the parenting plan.

Father claimed that Mother was abdicating her parental responsibilities by resorting to child care too often.  He pointed out that Mother worked Wednesday through Sunday but also used child care on her days off and after work hours.  He also found postings in social media that indicated Mother was staying out late at night.  He claimed that Morgan arrived on several occasions for visits unwashed and not properly dressed and that sometimes her diaper bag did not have sufficient supplies.

Mother explained that she uses two child care facilities for Morgan, one during the week and one on the weekend because of her job.  Mother is a realtor and works as the sales manager in a subdivision Wednesday through Sunday each week.  Morgan is enrolled Monday through Friday at the Academy of Cool Springs.  Mother testified she enrolled Morgan on her two days off to provide a consistent schedule and to avoid Morgan spending two days a week in the car running errands.  Mother uses a drop-in child care facility on the weekends when she has to work.  Mother admitted that she occasionally left Morgan in child care when she had social engagements or extra errands.

Mother testified she offered Father additional residential time with Morgan because he had finally taken steps to address his drinking problem.  According to Mother, Father did not receive overnight visitation in the original agreed parenting plan because of his alcohol use.  She only allowed Morgan to stay with Father when his eighteen year old son from a previous marriage was also present.

Father agreed that he drank every day but claimed he only had a total of six drinks

S.W.3d 710, 713 (Tenn. 2005); *Svacha v. Waldens Creek Saddle Club*, 60 S.W.3d 851, 855 (Tenn. Ct. App. 2001).

3

when he was responsible for Morgan. Father admitted that, in the past, he had trouble controlling his drinking. When a number of Father's colleagues confronted him in April 2013 about his alcohol use, he checked himself into Bradford Health Services and stayed for five days. For a month or two, Father refrained from drinking except for an occasional beer.

After Father's treatment at Bradford, Mother allowed Father to have more overnight visitation with Morgan and made her informal offer to modify the parenting plan. According to Mother, Father began drinking more heavily again after he found out Mother was in a relationship with another man. Father admitted he drank excessively for three weeks in either July or August 2013. In February 2014, he was arrested for driving under the influence.

At the hearing, Father claimed his alcohol problems were in the past. He stated he was limiting himself to drinking beer or vodka. He also agreed not to drink alcohol while exercising parenting time with Morgan. When asked why he continued to drink when so many people around him said it was a problem, Father replied: "I don't know. I'll think about it. It's something to be contemplated."

Mother testified Father's erratic behavior escalated during the pendency of this case. Father admitted he sent sexually explicit text messages to Mother. He also admitted to bad judgment in delivering a poem to Mother when he had been drinking. Mother testified Father began stalking her, and Father admitted he usually did "drive bys" on the weekend at her house. Father also sent Mother a picture of himself wearing his former father-in-law's dog tags. Mother testified she asked for an order of protection because "your behavior had totally escalated and was this downward spiral."

2. Proof Related to Modification of Child Support

Father's gross monthly income for 2013 was $5,956.17.[3] However, Mother's income varied, depending on the number of houses she sold. Mother described how her commissions and bonuses were calculated. Father did not challenge Mother's income per se. Instead, he claimed she grossly inflated her business expenses in an effort to lower her taxable income. Father testified even when the parties were married, he filed a separate tax return due to his concerns about her fraudulent business expenses.

The court admitted Mother's 2012 and 2013 federal income tax returns as exhibits. For 2012, her return showed a gross income from real estate sales of $174,831 and expenses of $47,971. For 2013, her gross income from real estate sales was $226,290, and her expenses were $68,915. For the first four months of 2014, Mother earned $52,695 in commissions. She did not produce any evidence of her expenses for 2014. She testified that

_____

[3] The parties do not dispute the amount of Father's income for child support purposes.

4

on average her business expenses are about thirty percent of her gross income.

Father questioned Mother extensively about her business expenses. For example, Mother deducted a car expense each year based on her business miles. Mother testified she drove, on average, eighty-eight miles per day for business; on some days she drove twenty miles and on other days, 200. Father described her business mileage as "obscene and ludicrous and false." Mother, however, produced her 2013 mileage log as documentation of her car travel.

Father also questioned Mother's deduction for office expenses because her office was provided to her free of charge by her employer. Mother explained her office expense for 2013 included purchasing a helium tank, balloons, materials for realtor functions, drinks, snacks, paper goods, coffee and a new coffeemaker for the office.

Father called Mother's gift expense "preposterous." Mother, on the other hand, testified that the gift expense included the gift cards she gave to buyers after closings. In 2013, Mother gave $500 gift cards to thirty buyers and $2,000 to her assistant. She also gave thirty clients a $100 Christmas gift. After Father pointed out that Mother's gift expense had tripled from 2012 to 2013, she explained that in 2012 she gave fewer gifts than usual in an effort to increase her income to qualify for a mortgage.

Although Mother claimed all of her business expenses were legitimate, she could not explain her 2013 deduction for legal and professional expenses, and she admitted her 2013 deduction for repairs and maintenance could have been a mistake. Father also pointed out that certain items included as business expenses shown on Mother's 2013 tax return could not be deducted from her self-employment income under the Guidelines.

## B. THE FINAL ORDER OF THE CHANCERY COURT

The court announced oral findings at the conclusion of the hearing and issued its final order on September 9, 2014. The court held Father had not shown a material change of circumstance such that it would be in the best interest of the child to modify the residential parenting schedule and dismissed his petition to modify the permanent parenting plan.

With regard to Mother's counter-petition for supervised visitation, the court determined Mother had shown a material change of circumstance. Specifically, the court found: "that Father testified that he 'went on a three week binge of drinking,' went into a rehab program or 'detox program' according to Father for five (5) days to get detoxed, and Father continued to drink alcohol, not just beer, but also Vodka . . . ." The court further determined modifying the residential schedule would be in the best interest of the child. The court modified the parenting plan to restrict Father to supervised "supportive" visitation on Saturday mornings for two hours and on alternate Thursday afternoons for two hours. The

5

court ordered the parties to divide the cost of the supervision equally.

To determine child support, the court made several findings with regard to Mother's income and business expenses. The court accepted Mother's gross income and business expenses from her 2012 federal tax return. The court also accepted Mother's gross income from her 2013 tax return. The court, however, found her 2013 gift expense was excessive and, thus, reduced her business expenses for that year by $8,000. The court multiplied Mother's gross monthly income for the first four months of 2014 by three to arrive at a gross annual income. The court then projected her 2014 business expenses based on her 2012 expenses and arrived at a projected net income for 2014. The court then averaged Mother's income over the three years to arrive at an average income of $135,000, or a monthly income of $11,252. Based on the parties' gross incomes, the court ordered Father to pay $911 per month in child support, retroactive to the date of his petition to modify.

Because Father was successful in his petition to modify child support and Mother was successful in her petition to modify parenting time, the court ordered Father to pay only one-half of Mother's attorney's fees, or $19,000.

After the hearing, Father filed nineteen separate pleadings with the court, including motions to alter or amend the court's final order, motions to hold Mother in criminal contempt, and subpoenas to various third parties. On November 6, 2014, the court denied Father's motions to alter or amend because he was attempting to re-litigate issues previously determined by the court. The court also denied Father's motion for criminal contempt.

## II. ANALYSIS

Father raises multiple issues on appeal. Initially, Father asserts the court erred in limiting several of his discovery requests. Father also challenges the court's determination that he did not establish a material change of circumstance sufficient to modify the residential parenting schedule and that Mother did establish such a material change. He argues the court erred in its calculation of child support and in ordering him to pay half of Mother's attorney's fees. Mother appeals the court's apportionment of the cost of supervised visitation and the award of only half of her attorney's fees. Mother also seeks an award of her attorney's fees on appeal.

### A. PRE-TRIAL DISCOVERY

We begin our analysis with Father's discovery issues. We review pretrial discovery decisions under an abuse of discretion standard. *West v. Schofield*, 460 S.W.3d 113, 120 (Tenn. 2015). A court abuses its discretion when it applies an incorrect legal standard, reaches an unreasonable result, or bases its decision on a clearly erroneous assessment of the evidence. *Lee Med., Inc. v. Beecher,* 312 S.W.3d 515, 524 (Tenn. 2010). In reviewing the

trial court's exercise of discretion, we presume that the decision is correct and review the evidence in a light most favorable to upholding the decision. *Lovlace v. Copley,* 418 S.W.3d 1, 16-17 (Tenn. 2013).

Parties are allowed to discover "any matter, not privileged, which is relevant to the subject matter involved in the pending action." Tenn. R. Civ. P. 26.02(1). Information sought through the discovery process must have "some logical connection to proving [the party's] case and/or obtaining his prayed-for relief." *West*, 460 S.W.3d at 125. Our rules of evidence define relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401.

1. Character Evidence

Father sought to subpoena information from Mother's employer regarding work-related events that occurred in 2010. Father claimed Mother was suspended from work for forging a client's signature on a work order. Mother disputed Father's description of the events and moved to quash the subpoena on the ground that the subpoena "seeks information prior to the parties' divorce and such information is irrelevant to the pending action, and is sought solely for the purpose of harassment." The court granted Mother's motion, holding the events from 2010 were "irrelevant and not likely to lead to the discovery of relevant evidence." Father argues the 2010 information is relevant because the information is probative of Mother's truthfulness. *See* Tenn. R. Evid. 608.

Under these circumstances, we find no abuse of discretion in quashing the subpoena. We agree with the court that evidence of Mother's alleged work-related forgery is irrelevant to the issues raised in the petitions to modify the residential parenting schedule and child support. We also note that "[s]pecific instances of conduct of a witness for the purpose of attacking or supporting the witness's character for truthfulness, other than convictions of crime as provided in Rule 609, may not be proved by extrinsic evidence." *Id.* The court did provide Father the opportunity to question Mother regarding the alleged incident at the hearing.

2. Documentation of Business Expenses

Father also sent interrogatories and requests for production of documents to Mother, seeking Mother's documentation of her business expenses. Mother objected to Father's requests on the ground that the requested information was "irrelevant, unduly burdensome, and calls for privileged and confidential information."

The trial court ruled that Father could take the deposition of Mother's tax preparer and request information about the basis for Mother's business deductions. The court excused

Mother from providing further information until after the deposition of the tax preparer was taken.

We find no abuse of discretion in the trial court's decision to direct Father to first take the deposition of Mother's tax preparer. The trial court is authorized to limit discovery if it determines that "the discovery sought is unreasonably cumulative or duplicative or is obtainable from some other source that is more convenient, less burdensome or less expensive." Tenn. R. Civ. P. 26.02(1).

Father took the tax preparer's deposition on May 13, 2014. After the deposition, Father filed a motion asking the court to calculate Mother's income without subtracting any business expenses because the tax preparer could not provide sufficient information about the basis for her expenses. [4] The court reserved ruling on Father's motion until the hearing, but Father never sought to compel responses to his previous interrogatories or requests for production after the deposition.

While Mother's documentation for her business expenses is relevant to the determination of her income for child support purposes and discoverable, we conclude that Father waived his right to pursue this issue on appeal. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). The court allowed him to take the tax preparer's deposition in order to seek the documentation he requested. After Father failed to obtain the documentation he felt necessary from Mother's tax preparer, Father had the opportunity to make an application to compel discovery from Mother. *See* Tenn. R. Civ. P. 37. He failed to do so.

3. Use of Grandmother as Babysitter

Father also sought information about Mother's use of maternal grandmother as an overnight babysitter. Mother objected, and the court ruled that the information was irrelevant. Under these facts, the time Morgan spent with her grandmother was not relevant to whether a material change of circumstance had occurred. Tenn. R. Evid. 401. The court did permit Father to obtain discovery regarding Mother's use of commercial child care providers, and we find this sufficient under the circumstances.

---

[4] Father did not file a copy of the tax preparer's deposition in support of his motion. Instead, he filed the deposition as an exhibit to his motion to alter or amend the court's final order.

8

B. MODIFICATION OF THE RESIDENTIAL PARENTING SCHEDULE

1. Standard of Review

We next consider the trial court's dismissal of Father's request and grant of Mother's request to modify the residential parenting schedule. We review the court's findings of fact[5] de novo on the record, with a presumption of correctness, unless the evidence preponderates otherwise. *Armbrister v. Armbrister,* 414 S.W.3d 685, 692 (Tenn. 2013). Evidence preponderates against a trial court's finding of fact when it "support[s] another finding of fact with greater convincing effect." *Watson v. Watson,* 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005). In weighing the preponderance of the evidence, determinations of witness credibility are given great weight, and they will not be overturned without clear and convincing evidence to the contrary. *In re Adoption of A.M.H.,* 215 S.W.3d 793, 809 (Tenn. 2007). We review the trial court's conclusions of law de novo, with no presumption of correctness. *Armbrister,* 414 S.W.3d at 692.

2. Material Change of Circumstance

We apply the two-step analysis in Tennessee Code Annotated § 36-6-101(a) (2014) to requests for modification of the primary residential parent or the residential parenting schedule. *See, e.g.*, *In re T.C.D.,* 261 S.W.3d 734, 743 (Tenn. Ct. App. 2007) (primary residential parent modification); *In re C.R.D.,* No. M2005-02376-COA-R3-JV, 2007 WL 2491821, at *6 (Tenn. Ct. App. Sept. 4, 2007) (residential parenting schedule modification). The threshold issue is whether a material change of circumstance has occurred since the court's prior custody order. *See* Tenn. Code Ann. § 36-6-101(a)(2)(B) (Supp. 2015); *Armbrister,* 414 S.W.3d at 697-98. The "determination[] of whether a material change of circumstance[] has occurred" is a factual question. *Armbrister,* 414 S.W.3d at 692; *see also In re T.C.D.,* 261 S.W.3d at 742. Only after a material change of circumstance has been found must the court decide whether modification is in the child's best interest. *Armbrister,* 414 S.W.3d at 705.

---

[5] As an initial matter, Father argues that the trial court failed to make specific findings of fact and conclusions of law. Rule 52.01 of the Tennessee Rules of Civil Procedure requires a trial court, in all non-jury cases, to "find the facts specially" and to "state separately its conclusions of law" before directing entry of a final judgment. Tenn. R. Civ. P. 52.01. While "[t]here is no bright-line test by which to assess the sufficiency of factual findings, . . . 'the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue.'" *Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013) (quoting 9C Charles A, Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2579, at 328 (3d ed. 2005)). While Father describes the trial court's findings of fact as "cursory," we disagree. The court adequately stated the basis for its decision and the facts upon which it relied.

If a modification of the residential parenting schedule is sought, the statute "sets 'a very low threshold for establishing a material change of circumstances.'" *Boyer v. Heimermann,* 238 S.W.3d 249, 257 (Tenn. Ct. App. 2007) (quoting *Rose v. Lashlee,* No. M2005-00361-COA-R3-CV, 2006 WL 2390980, at *2 n.3 (Tenn. Ct. App. Aug. 18, 2006)). The petitioner must "prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest." Tenn. Code Ann. § 36-6-101(a)(2)(C). The change must have occurred after entry of the order sought to be modified. *Caldwell v. Hill,* 250 S.W.3d 865, 870 (Tenn. Ct. App. 2007). However, unlike the standard for a change of primary residential parent, whether the change was reasonably anticipated when the prior residential parenting schedule order was entered is irrelevant. *Armbrister,* 414 S.W.3d at 704. "[M]erely showing that the existing arrangement [is] unworkable for the parties is sufficient to satisfy the material change of circumstance test" for residential parenting schedule modification. *Rose,* 2006 WL 2390980, at *2 n.3. A material change of circumstance in this context may include, but is not limited to:

> [S]ignificant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

Tenn. Code Ann. § 36-6-101(a)(2)(C).

In this case, the parties filed competing petitions to modify the residential parenting schedule. Father alleged that his increased parenting time at Mother's request and Mother's excessive use of child care represented a material change of circumstance. Mother, on the other hand, alleged Father's erratic behavior and alcohol use represented a material change of circumstance.

After reviewing this record, we find the preponderance of the evidence supports the trial court's findings with regard to material changes of circumstance. These parties divorced in November 2012, and Father filed his petition less than a year later. The child's needs did not change significantly during this time period. We find no proof in this record that the parties failed to adhere to the plan, other than Mother's offer of additional parenting time, or that the plan was unworkable. We find, as did the trial court, that Mother's offer of additional parenting time after Father's treatment at Bradford is not evidence of a material change.

Moreover, Mother's use of child care did not constitute a material change. Mother testified she enrolled Morgan at one child care facility during the week for continuity and that she was required to use drop-in child care on the weekends due to work. Her use of child

care while running errands or meeting friends did not equate to abdication of her parental responsibilities.

We further conclude the preponderance of the evidence supports the trial court's finding that Father's increasingly erratic behavior and alcohol use was a material change. Father admitted he was abusing alcohol in the spring of 2013. He checked himself into a rehabilitation center after his friends and colleagues confronted him but only remained in the facility for five days. He continues to drink beer and vodka. He was arrested for driving under the influence in February 2014. He admitted he "overindulged" in alcohol for three weeks in the summer of 2013 and for some period of time around his arrest. He sent disturbing text messages, pictures, and a poem to Mother, most likely when he had been drinking. Father refused to stop drinking entirely, and instead has pledged to not drink alcohol while exercising visitation with Morgan. Father's sole argument is that Mother did not present evidence that his drinking has harmed Morgan. Mother testified that she only allowed Father to keep Morgan overnight when his teenaged son was also present, and his visitation has effectively been supervised since December of 2013. Based upon these facts, we agree with the trial court that Mother met her burden of proving a material change of circumstance.

3. Best Interest of the Child

Because a material change of circumstance has been found, we now turn to the question of the child's best interest. Tenn. Code Ann. § 36-6-101(a)(2)(C); *Armbrister,* 414 S.W.3d at 705. For this analysis, the child's needs are paramount; the desires and behaviors of the parents are secondary. *See In re T.C.D.,* 261 S.W.3d at 742.

The trial court considered the statutory best interest factors and found modification of the residential parenting schedule to include a supervised visitation requirement was in Morgan's best interest. *See* Tenn. Code Ann. § 36-6-106(a) (2014). The court found both parents cared deeply for Morgan. Morgan has been raised in a stable environment with Mother, and Mother has support from her parents.

The court based its determination of best interest primarily on Father's "mental and physical health." *See* Tenn. Code Ann. § 36-6-106(a)(8) (directing the court to consider "[t]he moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child"). The court specifically found:

> Father's continued devotion to consumption of alcohol when he recognizes the risk is frightening; that Father consumes alcohol to excess and denies it; that Father's testimony that he won't consume alcohol when he has custody of the minor child is equivalent to a drug addict saying I won't use cocaine when my

11

child is with me; that Father is at risk and that allowing Father to
have unsupervised visitation would put the child at risk.

Upon review of the record, we conclude the preponderance of the evidence supports the trial court's findings and modification of the residential parenting schedule is in the child's best interest.

## C. MODIFICATION OF CHILD SUPPORT

After modifying the residential parenting schedule, the trial court also modified child support. Neither party contests the trial court's finding that a significant variance existed between the child support ordered under the original parenting plan and the child support required under the Guidelines at the time of the hearing. *See* Tenn. Code Ann. § 36-5-101(g) (Supp. 2015); Tenn. Comp. R. & Regs. 1240-02-04-.05(2). Once a significant variance has been found, the court must increase or decrease the support order as appropriate under the Guidelines. Tenn. Comp. R. & Regs. 1240-02-04-.05(5). Father contends the trial court erred in determining Mother's gross income for child support purposes.

Appellate courts review child support decisions using the deferential abuse of discretion standard and will refrain from substituting their discretion for that of the trial court. *Richardson v. Spanos,* 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005). "We will not reverse the trial court's decision unless we determine it is clearly unreasonable based on the facts of the case and the applicable law." *Yates v. Yates*, No. M2015-00667-COA-R3-CV, 2016 WL 748561, at *11 (Tenn. Ct. App. Feb. 24, 2016); *see Richardson*, 189 S.W.3d at 725.

The first step in determining child support is setting the parties' gross income. Tenn. Comp. R. & Regs. 1240-02-04.04(3). "The integrity of a child support award is dependent upon the trial court's accurate determination of both parents' gross income." *Milam v. Milam,* No. M2011-00715-COA-R3-CV, 2012 WL 1799029, at *3 (Tenn. Ct. App. May 17, 2012). The Guidelines define gross income to include all income from any source. Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(1). Self-employment income includes income from work as an independent contractor less the ordinary and reasonable expenses necessary to produce the income. Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(3). "Excessive promotional, excessive travel, excessive car expenses or excessive personal expenses, or depreciation on equipment, the cost of operation of home offices, etc." are not considered reasonable expenses. Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(3)(ii)(I).

Because Mother's income is variable, the trial court considered evidence of Mother's income over the three year period between 2012 and 2014. *See* Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(b) ("Variable income . . . shall be averaged over a reasonable period of time consistent with the circumstances of the case and added to a parent's fixed salary or wages to

12

determine gross income."). Mother submitted her federal tax returns for 2012 and 2013. She also testified to her gross earnings for the first four months of 2014.

Father argues the trial court ignored his evidence establishing Mother's claimed business expenses for her vehicle, office,[6] telephone and gifts in 2013 were excessive. The trial court agreed with Father's argument that Mother's gift expenses for 2013 were excessive and reduced her claimed expense by $8000. With regard to the other three categories of expense, Father claimed the numbers were excessive, and Mother testified the amounts were reasonable. Father does not cite to any evidence in this record, other than his own testimony, to establish these expenses are excessive.

Upon review of this record, we have determined that Mother's 2013 tax return includes expenses that should not be included as "ordinary and reasonable expenses" under the Guidelines. Mother claimed depreciation on her home computer of $1,986 and a home office expense of $1,576. These items are specifically excluded under the Guidelines. *See* Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(3)(ii)(I). Moreover, when questioned about her deduction for repairs and maintenance, Mother indicated that entry may have been a mistake. Similarly, Mother could not explain her deduction for legal and professional services. Although these expenses should not have been used to reduce Mother's gross income for child support purposes, we have re-calculated Mother's income without the prohibited amounts and reached the same monthly income number used by the trial court. Even if the trial court erred in failing to disallow these amounts, the error did not affect the outcome and was, therefore, harmless. *See* Tenn. R. App. P. 36(b).

Father also argues the court erred in its calculation of Mother's work-related child care expense, which is part of the calculation of child support under the Guidelines. *See* Tenn. Comp. R. & Regs. 1240-2-4-.04(8)(c)(1). Mother testified her work-related child care costs were approximately $1,000 per month. Father points to the fee schedule for the Academy at Cool Springs, the child care facility Mother uses during the week, to demonstrate her costs are less than $1,000. Father fails to take into account Mother's child-care costs for the weekends she works. We conclude the preponderance of the evidence supports the trial court's use of $1000 for Mother's work-related child care costs.

D. ATTORNEY'S FEES

Both Mother and Father argue that the trial court erred in its award of attorney's fees. By statute, the prevailing party in child custody or support proceedings may recover from the other spouse reasonable attorney's fees incurred in that effort. Tenn. Code Ann. § 36-5-103(c) (2014). Awards of attorney's fees under this statutory provision are now "familiar and almost commonplace." *Deas v. Deas,* 774 S.W.2d 167, 170 (Tenn. 1989). Courts grant

---

[6] Father challenges the expense Mother deducted for her non-home office.

attorney's fees awards in these cases to "facilitate a child's access to the courts." *Sherrod v. Wix,* 849 S.W.2d 780, 784 (Tenn. Ct. App. 1992). The amount of attorney's fees awarded must be reasonable, and the fees must relate to custody or support issues. *Miller v. Miller,* 336 S.W.3d 578, 586 (Tenn. Ct. App. 2010).

Father's sole argument on appeal is that Mother's attorney's fees are unreasonable because Mother was responsible for this "prolonged, unduly contentious" case. Mother submitted the affidavit of her attorney setting forth her fees incurred in this case prior to the hearing. Father chose not to contest the amount of Mother's attorney's fees in the trial court. We conclude he has waived this argument on appeal.

Mother argues the court erred in not awarding her all of her attorney's fees. While an award of attorney's fees under this statutory provision is commonplace, it still remains a discretionary decision. As both parents were partially successful, we find no abuse of discretion in the trial court's decision to award Mother half of her attorney's fees.[7]

### E. Costs of Supervised Visitation

Mother argues the trial court erred in ordering the parties to divide the costs of supervised visitation equally. We find no abuse of discretion in the trial court's decision. *See Maupin v. Maupin*, 420 S.W.3d 761, 770 (Tenn. Ct. App. 2013) ("The details of permanent parenting plans are typically left to the discretion of trial courts.").

### F. Attorney's Fees on Appeal

Finally, Mother requests an award of her attorney's fees on appeal. We have discretion under Tennessee Code Annotated § 36-5-103(c) to award a prevailing party fees incurred on appeal. *Pippin v. Pippin,* 277 S.W.3d 398, 407 (Tenn. Ct. App. 2008); *Shofner v. Shofner,* 181 S.W.3d 703, 719 (Tenn. Ct. App. 2004). We consider the following factors in our decision to award fees: (1) the requesting party's ability to pay the accrued fees; (2) the requesting party's success in the appeal; (3) whether the requesting party sought the appeal in good faith; and (4) any other relevant equitable factors. *Hill v. Hill,* No. M2006-02753-COA-R3-CV, 2007 WL 4404097, at *6 (Tenn. Ct. App. Dec. 17, 2007). Considering these factors, we award Mother her attorney's fees incurred on appeal. We remand this case to the trial court for a determination of the proper amount of attorney's fees to be awarded to Mother.

---

[7] Father did not incur any attorney's fees because he represented himself in this case.

14

### III. CONCLUSION

For the foregoing reasons, the decision of the chancery court is affirmed, and this case is remanded for a determination of Mother's reasonable attorney's fees on appeal.

_____
W. NEAL MCBRAYER, JUDGE