FILED
08/30/2019
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 14, 2019 Session

## STATE OF TENNESSEE v. DOUGLAS WAYNE JACKSON

**Appeal from the Circuit Court for Montgomery County**
**No. 63CC1-2015-CR-834  William R. Goodman, III, Judge**

———————————————————

### No. M2017-01528-CCA-R3-CD

———————————————————

A Montgomery County Grand Jury indicted the Defendant with second degree murder (count one), vehicular homicide (count two), aggravated assault (count three), failure to complete boating safety certification (count four), and operating a motorboat without a valid identification number (count five).  Pursuant to a plea agreement, the Defendant entered a guilty plea to reckless homicide, a lesser included offense of second degree murder (count one).  The plea agreement further provided that the Defendant plead guilty as a Range II, multiple offender pursuant to Hicks v. State, 945 S.W.2d 706, 709 (Tenn. 1997) (holding that a knowing and voluntary guilty plea waives any irregularity as to offender classification or release eligibility), with the trial court to determine the length and manner of service of his sentence.  In exchange for the Defendant's plea of guilty, the State agreed to dismiss the remaining counts in the indictment.  Following a sentencing hearing, the trial court imposed a sentence of five-years' imprisonment.  Ten days later, the Defendant filed a motion to modify his sentence pursuant to Rule 35 of the Tennessee Rules of Criminal Procedure.  Following a second hearing, the trial court denied relief and imposed the same sentence.  In this appeal as of right, the Defendant argues that the trial court erred in sentencing the Defendant and in failing to grant his Rule 35 motion to modify the sentence.[1]  Upon our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

---

[1] Defendant's counsel at the plea and sentencing hearings withdrew after filing his Rule 35 motion. New counsel represented the Defendant at the Rule 35 hearing and withdrew after their completion. We refer to the Defendant's counsel at the plea and sentencing hearing as "trial counsel" and subsequent counsel as "Rule 35 counsel."

Michael Meise, Dickson, Tennessee, (on appeal), Chase Smith, Clarksville, Tennessee, (at trial) and John Maher, Clarksville, Tennessee (Rule 35 hearing) for the Defendant-Appellant, Douglas Wayne Jackson.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Assistant Attorney General; John W. Carney, Jr., District Attorney General; and Robert J. Nash, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

In this case, the Defendant was the driver of a boat that accidently ran over Stephanie Burns, the primary victim, and injured his brother. The victim died as a result of the injuries sustained in the accident. On May 8, 2017, the Defendant entered a guilty plea to reckless homicide, and stipulated to the following factual basis supporting the offense:

> June 29[,] 2013, [the Defendant], Amber Bradley, Bobbi Meadows, [the victim], and [the Defendant's brother] went boating together on [the Defendant's] boat that was owned by his family. This was in the afternoon of the 29th of June. There was some alcohol purchased by, I believe, Ms. Burns. It was placed in a blue and white cooler on the boat.
>
> All indications are things are going fine until the 911 call was made by Amber Bradley at about 5:12 that afternoon, stating that one of her friends were caught in the boat prop.
>
> Civilians arrived to render aid and the T.W.R.A. Agents – civilian and the agents did notice a blue and white cooler in the water along the bank.
>
> [The victim] was in the water being held above the water by Bobbie Meadows, who was in the boat. [The victim] was in distress from chopping injuries to her arms and torso.
>
> [The Defendant's brother] was struck in the head by the boat. He was bleeding. He was being rendered aid by other civilians. He was later taken to Gateway.
>
> [The victim] was pronounced dead at the scene by the paramedics.

T.W.R.A. had [the Defendant], Bradley, and Meadows, who were the last three on the boat, drive to the marina.

[The Defendant] and Meadows, at the time, were on probation. [The Defendant] was on probation, county probation. Mr. Meadows was on state probation.

During the ride upon the scene of [the victim's] death to the marina, where T.W.R.A. instructed them to go, there was some discussion about an agreement, in which they would get their stories straight about what happened to [the victim].

The story that was told to the T.W.R.A. Agents, on that day, was that there was a tubing accident and that's how [the victim] suffered her injuries or that she just fell off the back of the boat onto the prop.

Neither one of those turned out to be true. Mr. Meadows came forward a couple of days after this.

Mr. Meadows was in a relationship with [the victim]. And I believe [the Defendant] and Ms. Bradley were in a relationship. They all appeared to be friends at the time.

Mr. Meadows came forward and told T.W.R.A. Agents that [the Defendant's brother] had picked [the victim] up. I think [the victim] indicated that she needed to use the bathroom. He picked her up. [The Defendant] pushed both of them in the water.

Now, [the victim] could not swim and that was known. She wore . . . some sort of lifejacket when she did go in.

[The Defendant] then pushed them in the water and took off in the boat. I suppose that's when Mr. Meadows says, "She can't swim. You need to turn back around."

At this time, both [the Defendant's brother and the victim] were in the water. [The Defendant] turned the boat around, speeding back towards them. Evidently, lost sight of them.

Struck [the Defendant's brother] to the point where his head was - - he had a gaping wound on his head [,] and it was bleeding.

3

[The victim] was then caught literally in the prop that did substantial – to say the least, substantial damage. Of course, she succumbed to those injuries.

Witnesses did see a cooler in the water.

There was some indication after this happened and after 911 was called that there were comments made by these individuals to dump the contents of the cooler in the river to get rid of the alcoholic beverages that had been consumed.

[The Defendant], about 8:00 P.M., consented to a blood draw. At that point, those results were 0.03, of course, under the legal limit.

[The Defendant] was positive for synthetic marijuana in his system. The evidentiary value of that yet to be determined. [The Defendant] was over the legal limit.

So, those are the facts and circumstances outlining [the victim's] death and . . . this plea.

The trial court accepted the Defendant's guilty plea, and on July 11, 2017, a sentencing hearing was conducted. The State offered into evidence the presentence report, which was admitted without objection. The presentence report showed that the Defendant, age 27, had dropped out of high school in the tenth grade and had passed the general educational development (GED) test in 2010. The Defendant reported that he drank alcohol and used marijuana in the past; however, he no longer engaged in either activity. He further reported that he had not previously attended or received mental health, alcohol, drug, or family health treatment. The presentence report showed the Defendant had a criminal history consisting of several seat belt and improper lane change violations. The Defendant also had convictions for simple drug possession and reckless driving, for which he received a six-month probationary sentence.

Tania Burns, the victim's mother, testified that she had a good relationship with her daughter and that the victim had a minor child. A photograph of the victim and her daughter was admitted into evidence. She described the victim as a kind person, who "worked every day to take care of her child." Burns now acts as her granddaughter's guardian, and she said her granddaughter asks about her mother every day. Burns believed that the Defendant "need[ed] to do some time" because "he goes through life flying by the seat of his pants, with no regard for other people."

4

Gary S. Rogers, one of the Defendant's employers, testified that he had known the Defendant for five years. He described the Defendant as "a good employee."

Skylar Santoyo, the Defendant's brother, testified that he was present on the day of the offense. He apologized to the victim's mother for her loss and his involvement in the offense. He said that the Defendant had "real bad depression issues" since the offense.

The Defendant, age 27, testified that the victim was like a sister to him, and he wished he could have done things differently that day. Although he accepted responsibility for his actions, he blamed the tragedy on "reckless people" who were "horse playing" on his boat. He agreed that he was initially untruthful in explaining the circumstances of the victim's death and reasoned "it was the shock and the panic" of it all. The Defendant said he had changed since the victim's death, and he had not been on a boat. He also apologized to the victim's mother. He confirmed that he was on probation at the time of this offense, which was subsequently revoked. Because the Defendant was on bond for the instant offense, he explained that he served 90 days in confinement in the county jail for the probation revocation.

On cross-examination, the Defendant elaborated on what he meant by "reckless people" and said he would not let people on his boat who:

> want to throw people off the boat, because it's their birthday; people that want to throw their supposed girlfriend off the boat because they think it's funny that she can't swim without a lifejacket.

When pressed further by the State, the Defendant denied that he "ran over" the victim in the boat. He explained that he simply could not see the victim or his brother because of the water current. He said this was the first time he had driven a boat, and he admitted to drinking alcohol while on the boat that day.

Following argument of trial counsel, the trial court imposed a sentence of five years imprisonment with 35% release eligibility consistent with the Defendant's Range II offender status. Ten days after the July 11, 2017 sentencing hearing, the Defendant filed a motion pursuant to Rule 35 of the Tennessee Rules of Criminal Procedure seeking to modify his sentence to one year of confinement "with the balance being on Community Corrections." On July 28, 2017, the Defendant filed his notice of appeal seeking review of the trial court's imposition of the length and manner of service of his sentence. On December 14, 2017, the trial court conducted a hearing on the Defendant's Rule 35 motion to modify his sentence.

5

No evidence was offered at the Rule 35 hearing. Rule 35 counsel argued that certain mitigating factors were not "pled" or "brought" to the court at the prior sentencing hearing. He then asserted that mitigating factor (3), substantial grounds existed tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense, applied to the instant offense. Rule 35 counsel contended that "an emergency situation" was created when the victim was thrown in the water and began to drown. He further argued that when the Defendant drove the boat to rescue her, he could not see her. Although he was attempting to apply the civil doctrine of sudden emergency to mitigating factor (3), he conceded there was no legal authority to construe it in this way. Rule 35 counsel also generally urged the court to reconsider its sentencing determination and to apply factor (11), that the Defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct, and to apply factor (13), the catchall provision, or any other factor consistent with the purposes and principles of the Sentencing Act.

In ruling upon the Defendant's Rule 35 motion, the trial court stated that the Defendant was essentially asking "for another bite at the apple as relates to sentencing." The court then provided extensive oral findings denying relief and entered an order memorializing the same on February 8, 2018. We now turn to the issues presented in this appeal.

## ANALYSIS

The Defendant contends that the trial court abused its discretion in imposing sentence by failing to properly consider mitigating factors and improperly enhancing his sentence. He specifically argues that the trial court should have considered mitigating factor (3), that substantial grounds exist tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense; mitigating factor (11), that the defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct; and mitigating factor (13) any other factor consistent with the purposes of the Sentencing Act. In regard to enhancement factors, the Defendant argues that the trial court erred in applying enhancement factor (1), that the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. He further insists that the trial court erred in relying on his probationary status at the time of the offense to support both enhancement factor (13)(c) and section 40-35-103(1)(C). In response, the State contends, and we agree, that the trial court properly imposed the sentence in this case.

Before reaching the merits of the issues presented, we observe a procedural deficiency in the posture of this case. The Defendant filed a timely notice of appeal from

the trial court's original judgment imposing the five-year sentence on July 28, 2017. However, the trial court denied the Rule 35 motion on December 14, 2017, and entered an order memorializing the same on February 8, 2018. The record does not contain a notice of appeal from the order denying the Defendant's Rule 35 motion, which is the basis of most of the sentencing issues raised on appeal. This court has previously recognized "[c]umbersome as it may be, the rules of criminal and appellate procedure clearly provide that the action of a trial court on a Rule 35 motion and the appeal therefrom are separate and distinct from those concerning the original judgment." State v. Bilbrey, 816 S.W.2d 71, 75 (Tenn. Crim. App. 1991). The failure to file a notice of appeal deprives this court of appellate jurisdiction to review the issues raised during the Rule 35 hearing. Tenn. R. App. P. 4(a) (a notice of appeal "shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from"); State v. Rockwell, 280 S.W.3d 212, 214 (Tenn. Crim. App. 2007). Neither party has addressed this issue, and the Defendant has not requested a waiver of the notice of appeal requirement. When seeking to appeal the denial of a Rule 35 motion for reduction of sentence while the appeal of the original sentence is pending, the best practice is to file a motion to consolidate both matters with this court. Because no such motion was filed, we must consider whether to waive the filing of the notice of appeal requirement in order to address several of the issues raised herein.

"[I]n all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." Tenn. R. App. P. 4(a). "Waiver is not automatic and should only occur when 'the interest of justice' mandates waiver." Id. The record shows that there were multiple substitutions of counsel throughout this case. The Defendant supplemented the record on appeal with transcripts and orders from both the sentencing hearing and the Rule 35 hearing. As such, we conclude that the interest of justice is best served by waiving the filing of the notice of appeal requirement for the Rule 35 order in this case. We will now address, in its entirety, the merits of this appeal.

We review the length and manner of service of a sentence imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012). Moreover, the misapplication of enhancement or mitigating factors does not invalidate the imposed sentence "unless the trial court wholly departed from the 1989 Act, as amended in 2005." Id. at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." Id. This standard of review also applies to "questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012). A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or

7

reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." State v. Shuck, 953 S.W.2d 662, 669 (Tenn.1997).

A trial court must consider the following when determining a defendant's specific sentence and the appropriate combination of sentencing alternatives:

(1) The evidence, if any, received at the trial and the sentencing hearing;
(2) The presentence report;
(3) The principles of sentencing and arguments as to sentencing alternatives;
(4) The nature and characteristics of the criminal conduct involved;
(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b); see State v. Hayes, 337 S.W.3d 235, 264 (Tenn. Crim. App. 2010). The court must consider the defendant's potential for rehabilitation or treatment. Id. §§ 40-35-102, -103. In addition, the court must impose a sentence "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Id. §§ 40-35-103(2), (4). On appeal, the defendant has the burden of showing the impropriety of the sentence. See Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Comments.

Any sentence that does not involve complete confinement is an alternative sentence. See generally State v. Fields, 40 S.W.3d 435 (Tenn. 2001). A trial court should consider the following when determining whether an individual should receive alternative sentencing:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Id. § 40-35-103(1)(A)-(C); see State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

8

The denial of a motion to modify sentence pursuant to Rule 35 of the Tennessee Rules of Criminal Procedure is subject to an abuse of discretion standard of review. State v. Patterson, 564 S.W.3d 423, 429 (Tenn. 2018) (citing State v. Irick, 861 S.W.2d 375, 376 (Tenn. Crim. App. 1993)). "An abuse of discretion occurs when the trial court applies incorrect legal standards, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." West v. Schofield, 460 S.W.3d 113, 120 (Tenn. 2015) (citing State v. Banks, 271 S.W.3d 90, 116 (Tenn. 2008)). Rule 35 affords a defendant the right to file a motion for reduction of sentence with the trial court "within 120 days after the date the sentence is imposed or probation is revoked." Tenn. R. Crim. P. 35(a). This 120-day time limit begins to run immediately upon imposition of sentence and cannot be extended or tolled. Id. The filing of a notice of appeal does not divest a trial court of jurisdiction to adjudicate a subsequent timely filed Rule 35 motion. Patterson, 564 S.W.3d at 429 (citing State v. Bilbrey, 816 S.W.2d 71, 75 (Tenn. Crim App. 1991)); State v. Biggs, 769 S.W.2d 506, 509 (Tenn. Crim. App. 1988)). Where, as in this case, a defendant pleads guilty without an agreement as to sentencing, pursuant to Rule 11(c)(1)(B), and later files a Rule 35 motion to reduce the sentence the trial court imposed for the plea offense, the defendant is not required to make any particular showing in support of the motion. Id. at 433. "In these circumstances, Rule 35 functions simply as a second opportunity for a defendant to make a plea for leniency." Id. The trial court is afforded broad discretion in determining whether reduction of the initial sentence is appropriate in the interest of justice. Patterson, 564 S.W.3d at 433-34.

As a Range II, multiple offender convicted of reckless homicide, a Class D felony, the Defendant was subject to a sentencing range of not less than four (4) nor more than eight (8) years imprisonment. See T.C.A. §§ 39-13-215, 40-35-112. As such, the trial court's imposition of a five-year sentence is within the permissible range of punishment and presumed reasonable. Based on our review, the Defendant has failed to carry his burden of establishing the impropriety of his sentence. The record shows that the Defendant initially filed a pre-sentence memorandum and explicitly agreed that no mitigating factors applied to his sentence, and he re-affirmed this position at the sentencing hearing. He further agreed that he was on probation at the time of the offense and that he had a previous criminal history consisting of simple possession, reckless driving, and multiple seat belt, vehicle registration, and insurance violations. The trial court was particularly concerned with the fact that the Defendant had been twice cited for failure to use a seatbelt since the offense occurred, which evinced the Defendant's persistent reckless behavior. The record fully supports the trial court's application of enhancement factors (1) and (13).

9

The remainder of the Defendant's appellate issues stems from the Rule 35 motion to modify his sentence. Rule 35 counsel primarily argued that mitigating factors (3), (11), and (13) applied to the offense. The Defendant additionally argues, for the first time on appeal, that the trial court erred in considering his probationary status in support of enhancement factor (13)(c) and section 40-35-103(1)(C). He also argues generally that the trial court violated sentencing principles found in sections (5) and (6) of 40-35-103, because there was evidence that alcohol and synthetic marijuana had been used in the offense and demonstrates that the Defendant needs treatment or rehabilitation.

In denying the Defendant's Rule 35 motion, the trial court stated, in relevant part:

It is the contention of the Defendant that mitigating factors should be applied, specifically making reference to factor three that substantial grounds exist intending to excuse or justify the Defendant's criminal conduct though failing to establish a defense. And, in essence, the Defendant asserts the civil law doctrine of sudden emergency. One of the peculiar things about the doctrine of civil emergency, in order for it to be applicable the Defendant cannot have contributed to the creation of a sudden emergency.

It's the Defendant's position, apparently, that [the victim's] falling out of the boat created a sudden emergency. But the testimony was - - I found to be clear at the sentencing hearing that it was the conduct of the Defendant in operating the boat that caused her to fall out of the boat in the first place. So, even if we were to adopt a pure civil law, tort law, i.e. [Prosser] on [T]orts application to the facts, the doctrine of sudden emergency . . . would not apply. . . . Therefore, the Court does not find that factor three is applicable.

Factor 11, the Defendant relies upon, the Defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct. Again, I don't know whether the Defendant had a lot of experience operating a boat or not. But there's certain requirements that are imposed upon one. It's analog[ous] to if you're operating a motor vehicle up and down the highway there's certain standards that apply, and there's no excuse if you . . . haven't operated a truck that much before.

But the truth of the matter is, at least the Court finds: These are not unusual circumstances. That's the reason that . . . there are requirement[s]

10

that life preservers be[] worn by individuals in a boat . . . . So, I do not find that mitigating factor 11 is applicable.

Then the Defendant argues that under 13 any other factor consistent with the purposes of this chapter, and the fact that he entered a plea of guilty. . . . We got to recognize in this case the plea agreement reflects that there was an amendment of the indictment from second degree murder, a class A felony, down to class D felony, reckless homicide, and in turn then an open plea entered to that. I could not find factor 13 is applicable simply because the Defendant was able to negotiate a plea arrangement that he viewed to be satisfactory to him.

. . . .

But in any event, I do find, and I think I stated earlier, that subsection eight is applicable; that the Defendant before trial or sentencing failed to comply with the conditions of a sentence involving release into the community. And there was a general sessions judicial diversion that afforded him to the opportunity to be released in the community, not incarcerated, and he failed to comply with the terms of that. And clearly, enhancement factor 13 is applicable: That the time the offense was committed that he was on probation.

. . . .

B, confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offense. I do find subsection B is applicable. For us to merely take the position that this was a boating accident and we're supposed to apply some lower standard simply because we're on a boat is just not acceptable. Now, granted this may not be, what we consider ourselves to be, a maritime community. It's fast becoming one, and its serious business when you operate a boat and you have the lives of other people.

C, measures less restrictive than confinement have either frequently or recently been applied unsuccessfully to the defendant, and I find C to be applicable.

The record shows that the trial court interpreted the Defendant's Rule 35 motion as another "bite" at sentencing and thoughtfully considered each of the Defendant's claims.

11

Upon our review, we conclude that the Defendant has failed to establish that the trial court abused its discretion. Accordingly, the trial court determined, and we agree, that the Defendant was not entitled to a modified sentence pursuant to Rule 35.

## **CONCLUSION**

Based on the above authority and analysis, the judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE

12