IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 18, 2020 Session

## STATE OF TENNESSEE v. RICHARD JOSEPH DURICK

**Appeal from the Circuit Court for Williamson County**
**No. II-CR180450     Deanna B. Johnson, Judge**
_____

### No. M2019-01155-CCA-R3-CD
_____

Pursuant to a plea agreement, Richard Joseph Durick ("Defendant") pled guilty to one count each of attempted aggravated sexual exploitation of a minor and attempted sexual exploitation of a minor in exchange for an effective sentence of three years, with the manner of service to be determined by the trial court. Following a sentencing hearing, the trial court ordered Defendant to serve his sentence in confinement. On appeal, Defendant contends that the trial court abused its discretion by imposing a sentence of confinement, arguing that: (1) the trial court committed plain error in considering polygraph results and reports based on polygraph results when sentencing Defendant; (2) the trial court failed to consider Defendant's presumption of eligibility for probation; (3) the trial court failed to consider all of the factors under Tennessee Code Annotated section 40-35-103(1)(A)-(C); and (4) the trial court inappropriately considered factors used to determine length of sentence when determining the manner of service of his sentence. Defendant further contends that the trial court erred by denying his subsequently filed motion for a reduction of sentence pursuant to Rule 35 of the Tennessee Rules of Criminal Procedure. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT W. WEDEMEYER, J., joined.

Rob McKinney, Nashville, Tennessee, for the appellant, Richard Joseph Durick.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Assistant Attorney General; Kim R. Helper, District Attorney General; and Mary Katharine Evins, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## I. Factual and Procedural Background

In July 2018, the Williamson County Grand Jury issued an indictment charging Defendant with aggravated sexual exploitation of a minor, in counts 1, 3, and 4, and exploitation of a minor, in count 2. On April 8, 2019, Defendant pled guilty, as a Range I standard offender, to attempted aggravated sexual exploitation of a minor, a Class D felony, in count 1. In count 2, Defendant pled guilty, as a Range II multiple offender, to attempted sexual exploitation of a minor, a Class E felony.

At the guilty plea submission hearing, the State summarized the factual basis for Defendant's guilty pleas, as follows:

> Regarding the facts, the summary would be had this matter proceeded to trial, on March 16[], 2015, Special Agent Kenny Blackburn with the Tennessee Bureau of Investigation was conducting an on-line investigation in the BitTorrent network for offenders sharing child pornography. He came upon an IP address that was associated with a certain hashtag that was recognized as child pornography. The computer running the investigative BitTorrent software directly connected to that IP address where after [twenty-three] files were downloaded . . . showing that that IP address had made them available for sharing. That IP address was the sole candidate for the download and each file was downloaded directly from that IP address.

> Special Agent Blackburn then subpoenaed AT&T, the internet service provider for that IP address. And he discovered that the name on the account was [Defendant], located on . . . Chester Stephens Drive, Franklin, Williamson County, Tennessee. With that information Agent Blackburn attempted to obtain a search warrant from Judge Martin. Judge Martin did review the application and grant the search warrant.

> On April 30[] 2015, agents executed that search warrant on that above[-]mentioned address where several different devices were retrieved from [Defendant's] residence. Special Agent Nicholas Christians performed the forensic exam, wherefore evidence of child pornography was located. He also discovered key words consistent with child sexual abuse cases in the internet history. Using the -- under the user account [for Defendant] for certain devices.

As summarized in Defendant's presence report, the TBI investigative report indicated that the twenty-three files attributed to Defendant included a file showing a two to four-year-old nude child with an adult male penis in her mouth and another file depicting two boys, aged eight to twelve, with one boy anally penetrating the other boy. The report further indicated that Defendant typed internet search terms on his computer that were "consistent with an experienced offender."

Pursuant to a plea agreement, Defendant received concurrent sentences of three years with a thirty percent release eligibility on count 1 and three years with a thirty-five percent release eligibility on count 2.[1] The manner of service of the effective three-year sentence was to be determined by the trial court.

*Sentencing*

At a sentencing hearing, the State offered, as its proof, Defendant's pre-sentence report, including the report on the Psycho-Sexual Risk Assessment ("the psycho-sexual report") prepared by Dr. Donna Moore.[2] When the trial court asked if there was an objection to the State's exhibit, defense counsel responded, "No objection, Judge." As part of the defense proof, Defendant offered as exhibits a sentencing memorandum, letters from Defendant's wife and daughters, a summary of Defendant's medical reports, and a 2015 letter from defense counsel to the prosecutor indicating that Defendant was willing to enter plea negotiations and accept responsibility for the offenses. Defendant also made an allocution statement in which he said that he was "ashamed and deeply sorry for . . . all the pain and suffering [he had] caused to [his] family and to everyone [he had] hurt through [his] selfish addiction to pornography" and stated that he was "getting treatment[.]" Defendant explained that he viewed pornography, "both out of habit and as a means of managing stress." He said that he became addicted and eventually began viewing child pornography. Defendant further said:

> Although I cannot remember any instance of being sexually abused, there were markers that suggested that something was wrong.
>
> . . . .

---

[1] Based on the plea, the State entered a nolle prosequi on counts 3 and 4.

[2] By statute, a convicted sex offender who is seeking probation must submit to an evaluation for the purposes of identifying and assessing the offender's risk of re-offending and potential for treatment and to establish a treatment plan and procedures for monitoring behavior. Tenn. Code Ann. § 39-13-705(a) (2019). The evaluation report "shall be included as part of the presentence report and shall be considered by the court in determining the sentencing issues stated in this section." Tenn. Code Ann. § 39-13-705(b) (2019).

A close boyhood friend's father turned out to be a pedophile and later took his own life. I had spent a lot of time at their home. My childhood friend and I were accosted by older boys. He was raped, I -- I got away. That's what I remember.

Regarding his professional life, Defendant stated that he graduated from the University of Pittsburg in 1975 and then joined the Navy. He said that he was trained as a Navy pilot and eventually became a Navy flight instructor. Defendant stated that, after leaving the Navy, he attended dental school, graduating from the University of Texas in 1986. He then became a staff dentist for the Department of Veterans Affairs and worked in that position for twenty-five years. Defendant stated that, if he went to prison, he would lose over half of his retirement income and "substantial health insurance benefits." He said that he had been the family's primary wage earner and that his wife could not meet their financial obligations on her income alone. He requested that he be sentenced to probation, explaining that he had demonstrated he was not a flight risk, that he had not re-offended, and that he had "abided by all of the requirements put forth" and taken full responsibility for his actions.

Regarding the manner of service of Defendant's sentence, defense counsel argued:

We are asking for probation solely because the law allows it. Under 40-35-103, there are three factors when the Court must consider . . . when the Court considers confinement:

(1) A long history of criminal conduct. In this case, Judge, there is no prior criminal conviction that [Defendant] has. Now, the Court can consider uncharged criminal conduct of the child pornography as criminal conduct. However, . . . [Defendant] as part of his psycho-sexual, took a polygraph. Dr. Moore made certain findings and he is a good candidate for probation.

. . . .

[I]n this case, we have no evidence, from any report, that he shared pornography; he created pornography; he manufactured pornography; or distributed pornography, or even -- or sexual exploitation of a minor. He was a viewer. He's had a polygraph that's also mentioned in the report.

In response, the State argued that confinement was necessary to protect society and restrain Defendant, based on his long history of criminal conduct. The State argued that Defendant had a long history of viewing child pornography based on Defendant's

admissions to Dr. Moore contained in the psycho-sexual report. Defendant admitted that he had first possessed images of child pornography fifteen years prior, explaining that this "included images of underage females and males engaged in sexual acts or nude[,]" that Defendant "recalled seeing children as young as two years old[,]" and that Defendant "admitted that he fantasized of having sex with underage females."

The State asserted that Defendant "failed" a polygraph test conducted as part of the psycho-sexual evaluation. The State further argued that Dr. Moore found Defendant was "at risk for engaging in sexual misconduct and his risk is higher for obtaining illegal images." The State also noted that, while the case was pending, Defendant admitted that he purchased adult pornography "as a method of coping." The State argued that Defendant's claim that he had an addiction and used child pornography to manage stress indicated that Defendant was mitigating the offenses and was not accepting full responsibility for his crimes.[3]

At the conclusion of the hearing, the trial court stated:

> In determining the appropriate sentence for [these] offense[s], the Court has considered the evidence presented here today at this sentencing hearing; as well as the pre-sentence report; the sentence -- sentencing principals embodied in Tennessee Code Annotated [sections] 40-35-101 and all of 40-35-102, 103 and all of that chapter; and any arguments made as to alternative sentencing; the nature and characteristics of the criminal conduct involved; any statistical information provided by the Administrative Office of the Courts; any enhancing or mitigating factors offered by the parties . . . ; the allocution made by [D]efendant; and Defendant's potential for rehabilitation or treatment.

The trial court further stated that it read and considered the letters submitted by Defendant's wife and daughters and the letter from defense counsel to the prosecutor indicating Defendant's acceptance of responsibility.

The trial court continued:

> In considering [section] 40-35-102, the Court has gone through all of those factors. And the sentencing considerations in [section] 40-35-103,

---

[3] During the State's argument, defense counsel objected to the prosecutor's argument about Defendant's use of the BitTorrent network and its ability to disseminate images, contending that references to it in the presentence report constituted hearsay because the State called no witnesses to testify. The trial court noted that Defendant failed to object to introduction of the presentence report, thereby permitting reliance on the presentence report's reference to BitTorrent.

the Court has considered those factors. As pointed out by [defense counsel], sentencing involvement -- involving confinement should be based on the following considerations, and it lists (a),(b) and (c).

As far mitigating factors, [section] 40-35-113, none have been proposed but the Court does find that subsection (13), which is sort of the catch-all, any other factor consistent with the purposes of this chapter. That applies in that there was somewhat of an acceptance of responsibility early on. I don't find it to be a total and complete acceptance of responsibility given the looking at the porn but certainly the Court gives [Defendant] credit under subsection (13).

The trial court stated that it had studied the presentence report, as well as the report on the psycho-sexual evaluation, and that it relied heavily on the reports. Reading from the psycho-sexual report, the trial court said:

[Defendant] was looking for child porn. [He] was looking at boys and girls. . . . [He] was going to sites looking for sex, oral sex, preferred females, age range of pre-teen children, pre-teen girls with adult males having oral sex, pre-teen girls with intercourse with adult males, but not as much; looking at images of boys with adult men and boys.

The trial court noted that Defendant told Dr. Moore that, at one point, his wife found adult pornography and wanted to divorce him. Defendant stated that he went to group therapy and individual therapy, and after that, he "didn't restrain [himself]" and began looking at child pornography. Reading from the psycho-sexual report, the trial court noted that Defendant was found to be "deceptive/untruthful on the [polygraph] examination with unresolved issues/significant reactions to sexual contact with minor females and arranging to meet known minors for sexual purposes." The trial court noted that Defendant admitted that he had "masturbated to child pornography when viewing it, which he estimated to be about . . . two to three times weekly." Additionally, Defendant admitted that he had fantasized about having sex with the underage females on the videos he had viewed.

The trial court recounted that Defendant admitted to viewing "hundreds of images of children in sexually exploited images, mostly females, ages zero to 18 by themselves or exposing their genitals with adults; in sexual contact with adults; and being penetrated by adults." Regarding the conclusions reached in the psycho-sexual report, the trial court noted that Dr. Moore found Defendant had "sexual preoccupation issues and may derive some identity from sexual acting out and using sex to soothe" himself, which Dr. Moore described as "risk relevant for him." Dr. Moore also found that Defendant

"demonstrate[d] significant objectification, as well as an attitude that his needs and wants are more important than other people." Dr. Moore determined that Defendant was at risk for engaging in sexual misconduct, that his risk is higher for obtaining illegal child images, and that "[h]is dynamic predictors elevate his risk somewhat[.]"

Based on these considerations, the trial court found that confinement was "necessary to protect society by restraining a defendant who has a long history of criminal conduct[,]" noting that Defendant's criminal conduct went back fifteen years, and it ordered Defendant to serve his three-year sentence in the Tennessee Department of Correction. The trial court entered the judgments of conviction on June 18, 2019, and Defendant filed a timely notice of appeal with this court on July 1, 2019.

*Rule 35 motion*

On October 1, 2019, Defendant filed a timely motion under Rule 35 of the Tennessee Rules of Criminal Procedure, seeking a reduction of his sentence. Defendant asserted that the State's argument at the sentencing hearing was "focused on the results of the polygraph report[,]" which he argued was inadmissible evidence. Defendant further asserted that he had undergone shoulder surgery since the sentencing hearing; that he had continued to attend sex offender treatment; and that "[d]ue to [Defendant's] deteriorating medical condition" he was an ideal candidate for probation.

At a hearing on the Rule 35 motion, defense counsel argued that the trial court should modify Defendant's sentence to probation or community corrections. As grounds, he asserted that the report on the psycho-sexual evaluation contained improper evidence of Defendant's polygraph exam that should not have been admitted at sentencing. Additionally, counsel noted that Defendant had continued to attend treatment with Dr. Moore. Defense counsel stated, "[Defendant has] also completed another polygraph to make sure that he is towing the line. He has passed that as well." Further, Defendant had recently had shoulder surgery and was "still in a sling and cast[,]" and his daughter, who was studying in Bulgaria, had been hospitalized after having a seizure.

The State responded that psycho-sexual evaluation must include "an objective measure" to be a valid assessment and that the objective measure that Dr. Moore used was a polygraph. The State noted that, due to the nature of Defendant's convictions, the trial court was required by statute to consider the psycho-sexual report before sentencing Defendant. The State argued that Defendant had presented only limited proof regarding his shoulder surgery and no proof that he was unable to be incarcerated or would be a burden on the prison due to the surgery. Finally, the State argued that Defendant's continued therapy with Dr. Moore would not be sufficient to require that Defendant's

sentence be reduced in the interests of justice. The trial court took the matter under advisement at the conclusion of the hearing.

On February 3, 2020, the trial court filed an order denying Defendant's Rule 35 motion. In the order, the trial court found that Defendant was specifically asked whether there was an objection to the introduction of the psycho-sexual report and that Defendant stated he had no objection. The trial court explained that it had re-examined the facts of the case and the applicable sentencing factors. The court also reviewed the transcript of the sentencing hearing, the papers filed by the parties, and the arguments of counsel. Based on its review, the trial court found that it would not be in the interests of justice to grant the Rule 35 motion. Defendant filed a timely notice of appeal on February 18, 2020, and on February 20, 2020, this court consolidated Defendant's appeals.

## II. Analysis

On appeal, Defendant asserts that the trial court abused its discretion by imposing a sentence of confinement. Defendant further contends that the trial court erred by denying his motion for a reduction of sentence pursuant to Rule 35 of the Tennessee Rules of Criminal Procedure and argues that the trial court should have suspended his sentence to probation or community corrections.

### A. Sentence of confinement

In determining the proper sentence, a trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* Tenn. Code Ann. § 40-35-210 (2019); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. Tenn. Code Ann. § 40-35-103 (2019). To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. Tenn. Code Ann. § 40-35-210(e) (2019); *State v. Bise*, 380 S.W.3d 682, 706 (Tenn. 2012).

When the record clearly establishes that the trial court imposed a sentence within the appropriate range after a "proper application of the purposes and principles of our

Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *Bise*, 380 S.W.3d at 707. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401 (2019), Sentencing Comm'n Cmts. The abuse of discretion with a presumption of reasonableness standard of review set by our supreme court in *Bise* also applies to a trial court's decision to grant or deny probation. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (citing *Bise*, 380 S.W. 3d at 708).

Tennessee Code Annotated section 40-35-303 states that "[a] defendant shall be eligible for probation under this chapter if the sentence actually imposed upon the defendant is ten (10) years or less; however, no defendant shall be eligible for probation under this chapter if convicted of a violation of § 39-13-304, § 39-13-402, § 39-13-504, § 39-13-532, § 39-15-402, § 39-17-417(b) or (i), § 39-17-1003, § 39-17-1004 or § 39-17-1005." Tenn. Code Ann. § 40-35-303(a) (2019). Under the revised Tennessee sentencing statutes, however, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (citing Tenn. Code Ann. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" Tenn. Code Ann. § 40-35-102(6)(A) (2019).

Under Tennessee Code Annotated section 40-35-103, the trial court should look to the following considerations to determine whether a sentence of confinement is appropriate:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1) (2019). In addition, the principles of sentencing provide that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. *See* Tenn. Code Ann. § 40-35-103(2), (4) (2019).

A trial court should determine whether an eligible defendant is a favorable candidate for an alternative sentence that does not involve confinement before sentencing a defendant to a sentence involving confinement. *State v. James Demoss*, No. M2019-01583-CCA-R3-CD, 2020 WL 4199987, at *7 (Tenn. Crim. App. July 22, 2020) (citing *State v. Tammy Marie Harbison*, No. M2015-01059-CCA-R3-CD, 2016 WL 613907, at *6 (Tenn. Crim. App. Feb. 12, 2016)). Even if the trial court determines that a defendant is not a favorable candidate for an alternative sentence, the court can still impose an alternative sentence on an eligible defendant if the defendant proves that he is suitable for probation and that probation "will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *Carter*, 254 S.W.3d at 347 (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)).

There is no bright line rule for determining when a defendant should be granted probation. *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000). Every sentencing decision necessarily requires a case-by-case analysis. *Id.* A significant factor is the likelihood of reoffending, a "fundamental consideration in determining whether to grant or deny probation." *State v. Trent*, 533 S.W.3d 282, 293 (Tenn. 2017) (citations omitted). Other factors to be considered include "the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public." *State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997).

Here, Defendant was eligible for probation because the actual sentence imposed for each conviction was ten years or less and because the offenses for which Defendant was sentenced are not specifically excluded by Tennessee Code Annotated section 40-35-303(a). Defendant did not qualify for favorable status consideration, however, because he pled guilty as a Range II multiple offender on count 2.[4] *See State v. Homer L. Evans*, No. E2000-00069-CCA-R3-CD, 2001 WL 274069, at *3-4 (Tenn. Crim. App. Mar. 20, 2001) (upholding denial of full probation and noting that "by agreeing to be sentenced as a Range II offender, the defendant agreed to classification as a multiple offender for all purposes, including alternative sentencing"), *no perm. app. filed*.

Based on the findings announced at the conclusion of the sentencing hearing, the trial court determined that Defendant was not suitable for probation based on Tennessee Code Annotated section 40-35-103(1)(A), finding that because Defendant had a long history of criminal conduct, confinement was necessary to protect society from

---

[4] We note that Defendant pled guilty as a Range I standard offender in count 1 and, thus, would have qualified for favorable candidate consideration as to that count; however, count 1 was ordered to run concurrently with count 2.

- 10 -

Defendant. The trial court's determination that Defendant had a long history of criminal conduct was supported by the record because the proof established that Defendant's history of possessing and disseminating child pornography dated back fifteen years. Defendant admitted to Dr. Moore during the psycho-sexual evaluation that he had first viewed images of child pornography about fifteen years prior and that the images showed underage females and males engaged in sexual acts or nude. Defendant said that he preferred watching pre-teen females and that he usually masturbated to child pornography when viewing it, which he estimated to be about two to three times weekly. Moreover, as noted by the State, a trial court may look behind a plea agreement and consider the true nature of the offenses committed. *See State v. Hollingsworth*, 647 S.W.2d 937, 939 (Tenn. 1983). Although Defendant pled guilty to attempted aggravated sexual exploitation of a minor and attempted sexual exploitation of a minor, the presentence report established that Defendant had an extensive collection of child pornography and that he participated in file sharing services like BitTorrent. *See e.g., United States v. Cates*, 897 F.3d 349, 359 (1st Cir. 2018) (concluding that a defendant's use of BitTorrent for child pornography circumstantially established that he was aware he was providing child pornography for others, given that the program specifically provided for sharing of material between users). As a factual basis for his plea, the State recounted that, not only did Defendant possess child pornography but that he made them available for sharing online. Defendant clearly engaged in a deliberate pattern of criminal conduct, as evidenced by his use of a "drive scrubber" on his computer.

In addition to Defendant's lengthy history of viewing child pornography, the trial court considered and relied heavily on Dr. Moore's risk assessment in the psycho-sexual report in concluding that Defendant was not a good candidate for probation. Regarding the conclusions reached in the psycho-sexual report, the trial court noted that Dr. Moore found Defendant had "sexual preoccupation issues" and "derive[d] some identity from sexual acting out and using sex to soothe" himself, which Dr. Moore described as "risk relevant for him." Dr. Moore also found that Defendant "demonstrate[d] significant objectification, as well as an attitude that his needs and wants are more important than other people." Dr. Moore determined that Defendant was at risk for engaging in sexual misconduct, that his risk is higher for obtaining illegal child images, and that "[h]is dynamic predictors elevate his risk somewhat[.]" Based on a review of the psycho-sexual report, the record supports a conclusion that Defendant was at an elevated risk for reoffending and, thus, a poor prospect for probation. *See Trent,* 533 S.W.3d at 293.

### 1. Polygraph results

Defendant argues that that the trial court committed plain error by considering the polygraph results and "reports based on the polygraph results" when sentencing Defendant. As recognized by Defendant, however, he failed to object to the introduction

of the psycho-sexual report, which contained the polygraph results. By failing to raise a contemporaneous objection, Defendant waived our consideration of this issue. *State v. Gilley*, 297 S.W.3d 739, 762 (Tenn. Crim. App. 2008) ("The failure to make a contemporaneous objection constitutes waiver of the issue on appeal."); *see also* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.")

"[W]hen necessary to do substantial justice," this court may "consider an error that has affected the substantial rights of a party" even if the issue was waived. Tenn. R. App. P. 36(b). Such issues are reviewed under plain error analysis. *State v. Hatcher*, 310 S.W.3d 788, 808 (Tenn. 2010). Plain error relief is "limited to errors that had an unfair prejudicial impact which undermined the fundamental fairness of the trial." *State v. Adkisson*, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994). In order to be granted relief under plain error, five criteria must be met: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the accused must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is "necessary to do substantial justice." *Adkisson*, 899 S.W.2d at 640-41; *see also State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000) (Tennessee Supreme Court formally adopting the *Adkisson* standard for plain error relief). When it is clear from the record that at least one of the factors cannot be established, this court need not consider the remaining factors. *Smith*, 24 S.W.3d at 283. The defendant bears the burden of persuasion to show that he is entitled to plain error relief. *State v. Bledsoe*, 226 S.W.3d 349, 355 (Tenn. 2007).

Here, we are not persuaded that Defendant is entitled to plain error relief because Defendant cannot show that he did not waive the issue for tactical reasons. At the sentencing hearing, defense counsel acknowledged that he urged Defendant to participate in the psycho-sexual evaluation, and counsel initially tried to use Defendant's submission to the polygraph to Defendant's advantage at sentencing. Although defense counsel voiced a complaint about use of the polygraph evidence at the Rule 35 hearing, he then suggested that the trial court consider a more recent polygraph, which counsel asserted would show that Defendant was "towing the line. He has passed that as well." We conclude that Defendant's attempt to use the polygraph results when they favored him precludes plain error relief. Moreover, a review of the trial court's findings shows that its consideration focused on admissions made by Defendant both before and after the polygraph examination, rather than the fact that Defendant was found to be deceptive on some questions. Our supreme court has stated that, if a statement made during the course of a polygraph examination "is voluntary and consistent with other applicable constitutional and evidentiary rules, the statement can be introduced into evidence," *State*

*v. Damron*, 151 S.W.3d 510, 517 (Tenn. 2004), and there is no evidence that Defendant's admissions to Dr. Moore were not voluntary. Accordingly, Defendant has not shown that consideration of the error is necessary to do substantial justice or that it was of "such a great magnitude" that it affected the propriety of his sentence. *Adkisson*, 899 S.W.2d at 642. Defendant is not entitled to relief.

## 2. Presumption of probation eligibility

Defendant also contends that that the trial court failed to consider his presumption of eligibility for probation. However, the trial court clearly considered that Defendant was eligible for probation as the sentence imposed for each conviction was ten years or less and the offenses for which Defendant was sentenced were not excluded by Tennessee Code Annotated section 40-35-303(a). In fact, the whole point of the sentencing hearing was for the trial court to determine whether Defendant would serve his sentence on probation or some other form of alternative sentencing, or in confinement. Because Defendant was not considered a favorable candidate for an alternative sentence, as explained above, it was Defendant's burden to prove that he was suitable for probation and that probation would "subserve the ends of justice and the best interest of both the public and the defendant." *Housewright*, 982 S.W.2d at 357. Defense counsel argued at length that Defendant should be placed on probation, and the trial court stated that it had considered the arguments of counsel before imposing sentence. The trial court ultimately determined that Defendant was not suitable for probation based on Tennessee Code Annotated section 40-35-103(1)(A). This claim is without merit.

## 3. Factors under Tennessee Code Annotated section 40-35-103(1)(A)-(C)

Defendant also argues that the trial court failed to consider all factors under Tennessee Code Annotated section 40-35-103(1)(A)-(C). However, during the sentencing hearing, the trial court specifically stated, "And the sentencing considerations in [section] 40-35-103, the Court has considered those factors. As pointed out by [defense counsel], sentencing involvement -- involving confinement should be based on the following considerations, and it lists (a),(b) and (c)." As previously explained, the trial court made explicit findings about Defendant's history of criminal conduct under Tennessee Code Annotated section 40-35-103(1)(A) before imposing a sentence of confinement. Defendant has pointed to no authority for his apparent claim that the trial court was required to make explicit findings under section 40-35-103(1)(B) and (1)(C). In any event, *Bise* does not require that the trial court's reasoning be "particularly lengthy or detailed," so long as "the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." *Bise*, 380 S.W.3d at 706. This issue is without merit.

4. Consideration of inappropriate factors

Finally, Defendant contends that the trial court inappropriately considered Tennessee Code Annotated sections 40-35-103(2) (that a sentence should be no greater than that deserved) and -103(5) (that a defendant's potential for rehabilitation should be considered) when determining the manner of service of his sentence. However, as noted by the State, Tennessee Code Annotated section 40-35-103 specifically provides that these are general principles of sentencing, which are applicable to all aspects of sentencing. *See* Tenn. Code Ann. § 40-35-103, Sentencing Comm'n Cmts. This issue is likewise without merit.

Based on the foregoing, we conclude that the trial court acted within its discretion when it denied probation and imposed a sentence of incarceration.

*B. Rule 35 motion*

Defendant also contends that the trial court erred by denying his Rule 35 motion. Rule 35 of the Tennessee Rules of Criminal Procedure provides, as follows:

(a) Timing of Motion. The trial court may reduce a sentence upon motion filed within 120 days after the date the sentence is imposed or probation is revoked. No extensions shall be allowed on the time limitation. No other actions toll the running of this time limitation.

(b) Limits of Sentence Modification. The court may reduce a sentence only to one the court could have originally imposed.

(c) Hearing Unnecessary. The trial court may deny a motion for reduction of sentence under this rule without a hearing.

(d) Appeal. The defendant may appeal the denial of a motion for reduction of sentence but shall not be entitled to release on bond unless already under bond. If the court modifies the sentence, the state may appeal as otherwise provided by law.

Tenn. R. Crim. P. 35. According to the Advisory Commission Comments to Rule 35, "[t]he intent of this rule is to allow modification only in circumstances where an alteration of the sentence may be proper in the interests of justice." Tenn. R. Crim. P. 35, Advisory Comm'n Cmts.

The denial of a motion to modify sentence pursuant to Rule 35 of the Tennessee Rules of Criminal Procedure is subject to an abuse of discretion standard of review. *State v. Patterson*, 564 S.W.3d 423, 429 (Tenn. 2018) (citing *State v. Irick*, 861 S.W.2d 375, 376 (Tenn. Crim. App. 1993)). "An abuse of discretion occurs when the trial court applies incorrect legal standards, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *West v. Schofield*, 460 S.W.3d 113, 120 (Tenn. 2015) (citing *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008)). Where, as in this case, a defendant pleads guilty without an agreement as to sentencing pursuant to Rule 11(c)(1)(B) and later files a Rule 35 motion to reduce the sentence that the trial court imposed for the plea offense, the defendant is not required to make any particular showing in support of the motion. *Patterson*, 564 S.W.3d at 433. "In these circumstances, Rule 35 functions simply as a second opportunity for a defendant to make a plea for leniency." *Id.* at 434. The trial court is afforded broad discretion in determining whether reduction of the initial sentence is appropriate in the interest of justice. *Id.* at 433-34.

It is clear from the record that the trial court viewed Defendant's Rule 35 motion as a request that it reconsider its sentencing decision and modify Defendant's sentence to probation or community corrections. The trial court explained that it had re-examined the facts of the case and the applicable sentencing factors. The court also reviewed the transcript of the sentencing hearing, the papers filed by the parties, and the arguments of counsel. However, the trial court found that it would not be in the interests of justice to grant the Rule 35 motion. Upon review, Defendant has failed to establish that the trial court abused its discretion. *See Schofield*, 460 S.W.3d at 120. Accordingly, Defendant is not entitled to relief.

## III. Conclusion

For these reasons, we affirm the judgments of the trial court.

_____
ROBERT L. HOLLOWAY, JR., JUDGE

- 15 -